## THE CITY OF BANGOR *versus* ASA P. LANSIL.

The owner of land has a legal right to fill it up so as to interrupt the flow of
*surface water* over it, whether flowing from a highway, or any adjoining land.

Nor does the fact, that the land filled up was a swale, make any difference in
the owner's rights, provided no natural watercourse is obstructed.

If, in filling up his lot, the owner construct a drain for the flow of surface
water from the highway, which had been accustomed to flow across his lot,
and afterwards allow the drain to become obstructed, and it is repaired by
the town, the latter can maintain no action to recover the expense of such
repairs.

Such a drain is not a "private drain," within the meaning of § 12 of c. 16 of
the Revised Statutes.

ON EXCEPTIONS to the ruling of CUTTING, J.

CASE, under § 12, c. 16, of R. S., to recover the amount
expended by the plaintiffs in the repair of a drain.

The evidence, affecting the questions of law raised, tend-
ed to show that the drain in question was from Lincoln
street, through the defendant's lot, and another lot, to a
drain made by the city ; that the defendant's lot was former-
ly a swale, and the surface water flowed across it, but there
was no natural watercourse on it ; that Lincoln street was

constructed in 1834, and, after that, the surface water flowed in gutters down the street, till it came to the defendant's lot, and then passed off across his lot, in greater quantities than before the construction of the street; that, in 1852, the defendant filled up his lot so as to prevent the water from flowing from the street over it; and, thereupon, the street commissioner, without authority from the city, dug the drain and the defendant finished it, and the water from the street had passed off through it, until recently; that, the defendant failing to repair the drain after proper notice, the plaintiffs had repaired and enlarged it; and this action was brought to recover $43, the expenses incurred.

The presiding Judge instructed the jury, that it appeared by the testimony that there was a low swale on the lot of defendant, over which the water from the land in the vicinity naturally flowed; that, if defendant bought the lot under these circumstances, he had no legal right to fill up the lot and obstruct the natural flow of the water, and thus cause it to flow back into the street, and upon adjoining owners; that, if defendant filled up his lot, he was bound to make a suitable drain to carry away the water, so as not to injure the highway and adjoining proprietors; that, if defendant made the drain under these circumstances, it was a private drain, which he was bound to keep in repair, and, if he neglected to do so, and in consequence of such neglect, the highway was injured, the plaintiffs, after due notice, could themselves repair such drain and recover the expense of the defendant in this action.

The defendant (*inter alia*) requested the presiding Judge to instruct the jury, that, if the plaintiffs duly laid out and constructed Lincoln street, and the water flowed down the drains of such street to the defendant's lot which abutted upon said street, and a drain across the defendant's lot was needed to drain the water from the street, the defendant was under no legal obligation to construct such drain, but the law provided another remedy to secure the construction of the drain, and, if defendant, without permit from the proper

authorities, and through a misapprehension of his legal rights and obligations, constructed such drain, such construction would not of itself constitute it a private drain.

The presiding Judge refused to give the requested instructions, but did instruct the jury that, if more water was brought by the drains on Lincoln street down to the defendant's lot than naturally flowed there, the jury would deduct from the expenses of repair in like proportion.

The jury returned a verdict for plaintiffs of twenty-seven dollars, and stated, in answer to an inquiry from the Court, that they reduced the damages, because more water was brought to the defendant's lot by the construction of the street than formerly flowed there. The defendant excepted.

*W. H. McCrillis*, for defendant.

*A. G. Wakefield*, for plaintiffs.

The opinion of a majority of the Court was drawn up by

Davis, J.—By our statute of 1821, c. 121, copied from the Massachusetts Act of 1797, a person needing a drain " for his cellar," or for other purposes, could construct it, upon his own premises, *to the street;* and then, " by the consent and under the direction of the selectmen," he, either alone, or with others, might extend it across or along the street, to some suitable place of discharge. If there were several owners, it was a " common sewer." But, whether owned by one or more, it was a *private* drain.

Such drains were entirely different and distinct from gutters, made as part of streets, to drain off the surface water. Such gutters had always been made, under the general power and duty to open the streets and keep them in repair.

Unless by some city charters or by-laws, no *public* sewers, for the accommodation of the inhabitants, were authorized by law, until 1844. All such sewers, though constructed under and along the streets, were *private* property. And no change has ever been made in the law, making *such* drains

other than private property.    Many such may be found in all our cities and large towns.

By c. 94 of the laws of 1844, the municipal authorities were, for the first time, empowered to locate and construct *public* drains, for the common use of such adjacent proprietors as, for a stipulated price, desired to connect private drains therewith.    These *public* sewers were to be *located*, either under the streets, or, if necessary, through the lands of any person, who was to be compensated therefor.    The proceedings of the *location* are, in many respects, like the proceedings in locating streets.

As cities and towns were only *authorized*, and not *required*, to construct *public* drains, the sewerage of our cities has been, and still is, to a large extent, by *private* drains. These have, many of them, been made across or along the streets.    As they were liable to get out of repair, there had always been a provision by which any *owner* could repair a " common" sewer, at the expense of *all*.

But it was found that, in some cases, none of the *owners would* repair such drains; and that, by their want of repair, the *streets* across or along which they were constructed, were thereby made unsafe for the public travel.    And therefore, by c. 77, § 9, of the laws of 1854, the street commissioner of the city of Portland was authorized, in any such case, to repair the defective "private drain;" and the owners were made liable to the city for the expense of such repairs.    This *special* statute was made *general*, by R. S., c. 16, § 12.

The action before us was brought under this provision of the statute.

Was the drain repaired by the city in this case *such* a drain as is contemplated by the statute?

It is quite obvious that it was not a *public* drain, or sewer, within the meaning of the statute.    It was neither *located*, nor constructed, as such.    None of the provisions relating to sewerage by public drains, to be made and owned by the city, for the use of the abuttors on the streets, are applicable to it.

City of Bangor *v.* Lansil.

In discussing the question whether it was a "*private drain*," it is contended, in behalf of the city, that the defendant, in 1852, had no right to fill up his house lot, which was at the lowest point of a swale crossed by Lincoln street, so as to prevent the water flowing down the gutters either way, during a storm, from passing off over his lot, as before it was filled up.

His right to fill up his lot, depended on the question whether there had been a natural *watercourse* across the lot before Lincoln street was made. That street was made in 1834. No right to flow water across it had therefore been acquired, by prescription or otherwise, in 1852, unless there had been a *watercourse* there before 1834. If there had not been a watercourse there, though it was low, swampy land, and, with the adjacent lots, had been overflowed at certain seasons of the year, he had the right to fill it up.

A natural watercourse "consists of bed, banks, and water; yet the water need not flow continuously; and there are many watercourses that are sometimes dry. There is, however, a distinction to be taken in law, between a regular flowing stream of water, which at certain seasons is dried up, and those occasional bursts of water, which in times of freshet, or melting of ice and snow, descend from the hills, and inundate the country." Angell on Watercourses, 5th ed., § 1.

In accordance with this definition, it has been held, that, "when there is no watercourse, or stream of water, one cannot claim a right of drainage, or flow of water, from off his land, upon and through the land of another, merely because his land is higher than that of the other, and slopes towards it, so that the water which falls in rain upon it would naturally run over the surface in that direction." *Luther* v. *Winnissimet Co.*, 9 Cush., 171.

Whether there had been a watercourse was a question for the jury. If there had not been, then the defendant had the right to fill up his lot; and he was under no obligation to make any drain, or permit the city to make one.

But, if there had been a watercourse, though the defendant had no right to fill it up, still this action could not be maintained. The statute applies only to a "private drain," made strictly for private use, which the owners may keep open, or fill up, at their option, leaving the street in good repair. But a *watercourse* is private property only in a restricted sense. The owner of the land through which it flows has no right to fill it up, to divert the water from the land below, nor to turn it back upon the land above. For so doing, he is liable to indictment, or to an action on the case at *common law*, for the *damage* caused by the detention or flowage of the water. *Calais* v. *Dyer*, 7 Maine, 155.

But the action given by the statute, for the *expense of repairing*, cannot be applied to a *watercourse*, even if it is used for a drain. The language is clearly applicable only to drains and sewers which are strictly *private property*. The city can have no right *to use* such drains. The owners cannot be under obligation to keep such drains open *for the benefit of the city*. If the street gutters were opened into them, they would no longer be *private*, but *public*.

It is clear that the drain in this case is not such as the statute refers to, as a "private drain." If it was a watercourse, and the defendant was bound to keep it open, the remedy must be sought in a different action, not for the expense of repairing, but for the damage caused by obstructing it. *The verdict must be set aside, and a new trial granted.*

APPLETON, C. J., KENT, WALTON and BARROWS, JJ., concurred.

CUTTING, DICKERSON and DANFORTH, JJ., dissented.

CUTTING, J. — There are only two kinds of drains known to the law — one a public and the other a private drain. Public drains are those constructed by the municipal officers of a town under R. S., c. 16, § 2. All other drains are private drains, and embrace two classes. The first such as connect with a public drain by permission of the munici-

pal officers, and the second without such connection; of which latter class the defendant's drain was one.

It appears that Lincoln street was established and built in 1834, running through a low swale, extending from abov and below the sides of the road down and across the lo subsequently purchased and filled up by the defendant; tha⁺ a culvert was built across the street above the lot, below which culvert a drain extended down and through the defendant's lot to a public drain below. As to the construction of this drain, thus passing through the defendant's land, by whom and for what purposes built, there was controversy, but none whatever as to its actual existence. It was not a public drain, for it was not constructed by the municipal officers, and, if the street commissioner assisted in its construction, it was without authority and consequently a gratuitous act. It is true the defendant swears "that it is not a private drain nor any use to his lot, nor of any private advantage to him." The existence of the drain being admitted, it became a question of law as to its character. He may perhaps, now, in a certain sense truly say, after having filled up his lot, dammed up the road, and caused an overflow of water, that the drain is of no use to him so long as he is high and dry, and suffered so to remain in consequence of this drain. But the more important question now is, whether that drain is of any use to the public. When a road is legally laid out, and constructed, no owner of adjoining lands has lawful right by embankments to create an overflow of water; otherwise highways instead of being a public benefit would be a public nuisance, and such would be the situation of Lincoln street, if the defendant should prevail in this suit. Against such an act even the common law would afford a remedy, which is also found in § 12 of the Act before cited.

The instructions were in harmony with this construction of the law, except they were too favorable for the defendant, by which the damages were reduced as found by the jury.

DICKERSON and DANFORTH, JJ., concurred.