GEORGE GOODWIN *vs*. THE TEXAS COMPANY.

ROBERT STEWART *vs*. THE TEXAS COMPANY.

Cumberland.     Opinion, January 23, 1935.

*Robert J. Milliken, Milan J. Smith*, for plaintiffs.
*Strout & Strout*, for defendants.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, THAXTER, HUDSON, JJ.

STURGIS, J. Actions on the case for flooding the plaintiffs' lands and obstructing a natural water course by which they were drained. In the Court below, where the cases were tried together, the jury returned verdicts for the plaintiffs and the defendant filed general motions for new trials.

The Texas Company, in 1930, built a bulkhead out on the flats in front of its lands at South Portland, Maine, made nearly ten acres of new land by filling in shore with dredgings pumped from the bottom of the ocean, and inside the fill constructed a gravel dam designed to hold in the mud and water it had collected. The plaintiffs own two adjacent lots of land with the buildings thereon lying several hundred feet southwesterly of The Texas Company's property. When the fill was made, some of the sea water which came in with the mud overflowed and seeped through the gravel dam and flooded the adjacent properties. Although this overflow was pumped out, there is proof that some seepage continued, and this with collecting surface waters, except in the dry seasons, kept the plaintiffs' lands saturated and at times partially overflowed. As a result, the vegetation and trees were destroyed and the garden plots became unfit for cultivation.

There was also evidence which tended to prove that when The Texas Company constructed its new land it filled up the mouth of a natural water course which formerly drained the flooded area. Witnesses affirm the existence of a small stream which, in former years, ran through the plaintiffs' lands. They describe it as being about five feet wide and two feet deep, with a well-defined channel through which a fresh water current regularly flowed, and they agree that until it was obstructed it emptied into the ocean and furnished drainage for the lands along its course.

Engineers for the defendant Corporation describe the construction of the fill and the gravel retaining dam and exhibited topographical drawings of the lands involved, with elevations and measurements. They deny that there was any substantial overflow or seepage over or through the dam and profess ignorance of the existence of a water course. A chemist testified that an examina-

tion of the plaintiffs' lands made two years after the fill was completed showed that the water found there was fresh, and advanced the opinion that it had never been salt water. The further evidence offered by the defense related, in the main, to the existence of the water course and the amount of the damages which the plaintiffs suffered.

It is a settled rule of law that no one may artificially collect water on his own land and discharge it unlawfully upon his neighbor's property upon which it would not have naturally fallen, and if he does so he is liable for the resulting damages. *Smith* v. *Preston*, 104 Me., 156, 161, 71 A., 653. The evidence clearly shows that The Texas Company pumped large quantities of water from the sea in making its fill and that some of this salt water seeped over upon the plaintiffs' lots. The defendant Corporation is liable for any damages which resulted from this seepage.

The record indicates, however, that the general verdicts returned were based, in part at least, on a finding that The Texas Company had damaged the plaintiffs' lands by obstructing the natural water course which ran through and from them and by which they were drained. Under instructions from the Presiding Justice, the jury returned special verdicts on this issue, reporting as findings of fact that a water course as defined by law had existed and been obstructed as alleged in the writs.

The law applicable to this issue is also well settled. There is a public or natural easement in a water course belonging to all persons whose lands are benefited by it, and it can not be stopped up or diverted to the injury of other proprietors. To constitute a water course as defined by the law, it must appear that the water in it usually flows in a particular direction, by a regular channel having a bed with banks and sides, and usually discharging itself into some other body or stream of water. It must have a well-defined and substantial existence but need not flow continually or never be dry. *Morrison* v. *Bucksport and Bangor*, 87 Me., 353; *Bangor* v. *Lansil*, 51 Me., 521, 525. Applying this rule, the jury were fully warranted in finding that the plaintiffs' lands were flooded by the defendant's obstruction of a natural water course by which they were drained, and that the damage which resulted is directly traceable to this cause.

The general verdicts in these cases, which were properly returned on either or both counts of the writs, are supported by the weight of the evidence and must be sustained.

*Motions overruled.*
*New trials denied.*