### Kittridge A. JOHNSON and Bernice B. Johnson

v.

### Alvin R. WHITTEN.

Supreme Judicial Court of Maine.

April 21, 1978.

Libhart, Ferris & Dearborn by Joel A. Dearborn (orally), Ellsworth, for plaintiffs.

Robinson, Hunt & Kriger by Sarah M. Allison (orally), Stephen Staples, M. Roberts Hunt, Portland, for defendant.

Before POMEROY, WERNICK, ARCHIBALD, DELAHANTY, GODFREY and NICHOLS, JJ.

WERNICK, Justice.

On February 14, 1973, plaintiffs Kittridge A. Johnson and Bernice B. Johnson brought a civil action in the Superior Court (Hancock County) against defendant Alvin R. Whitten, claiming that defendant should respond to them in damages for having caused flooding of their land. The case was

tried before a jury in December, 1976. At the conclusion of the evidence defendant moved for a directed verdict in his favor, and the motion was granted. Plaintiffs have appealed from the judgment entered for defendant.

We deny the appeal.

Plaintiffs and defendant are abutting landowners in Winter Harbor. Plaintiffs' complaint sought relief on the ground that in 1969 plaintiffs' land became flooded after defendant had deposited fill on his own land which, allegedly, ". . . interfered with and dammed the natural drainage from the land of the plaintiffs."

Taken most favorably to plaintiffs, the evidence warranted findings of these facts. The land topography caused water to drain naturally from northeast to southwest, moving first across plaintiffs' property and then across defendant's property. Prior to 1969, the land in back of plaintiffs' house consisted of a wooded area and a foot path frequently used for passage to neighboring property. Although in the spring or fall, after heavy rains or the melting of snow, some water drained across plaintiffs' land, there was no serious problem from accumulations of water, and the land was always passable. However, the land behind the houses of plaintiffs and defendant was low-lying and, generally, was not completely dry. In 1969, defendant filled a portion of his land adjoining plaintiffs', constructing a barrier or roadway which impeded the natural flow of drainage. Shortly thereafter, water backed up and plaintiffs experienced flooding in the basement of their house and on their surrounding land, especially at the time of heavy rains.

Plaintiffs assert that the presiding Justice misconceived the law of Maine by his refusal to recognize that defendant's impeding, or diverting, the drainage of surface water could be a legal basis for defendant's liability to plaintiffs. In support of their contention plaintiffs rely upon *McRae v. Camden & Rockland Water Co.,* 138 Me. 110, 22 A.2d 133 (1941) and *Goodwin v. The Texas Co.,* 133 Me. 260, 176 A. 873 (1935).

These cases, however, are plainly distinguishable. *McRae* involved one landowner's collecting of water in a pit dug under a valve house. When, subsequently, the landowner unsuccessfully attempted to repair a defective drainage system, he caused the *non-natural collection* of water in the pit to be discharged upon the adjoining property on which the water would not otherwise have fallen naturally. *Goodwin,* too, involved the artificial collection of water by construction of a bulkhead on flats owned by The Texas Co., to be accomplished by filling the shore with dredgings pumped from the ocean floor. The dredgings were to be contained by a gravel dam designed to hold the mud and water in place. After the area enclosed by the gravel dam was filled some of the sea water contained in the mud overflowed upon adjacent property. See also *Smith v. Preston,* 104 Me. 156, 71 A. 653 (1908) (involving the obstruction of sidewalks by an accumulation of ice resulting from water artificially collected and discharged from a defective gutter of defendant's building).

In the case at bar defendant had not thus artificially collected water on his own land which was discharged upon the land of plaintiffs where it would not otherwise naturally have fallen. Rather, here, defendant erected a solid non-water barrier on his own land which caused the *natural drainage of surface water* to back up on plaintiffs' land.

Absent an *artificial collection* of water which is discharged, Maine law recognizes no liability as arising, *per se,* merely from the obstruction, or diversion, of the natural drainage of surface water. As stated in *Morrison v. Bucksport & Bangor R. R. Co.,* 67 Me. 353, 355–356 (1877):

"[I]t is well established that any proprietor of land may control the flow of mere surface water over his own premises, according to his own wants and interests, without obligation to any proprietor either above or below. . . . He may prevent surface water from coming upon his land according to its accustomed flow, whether flowing thereon from a highway or any adjoining land. *Bangor v. Lansil,*

. . . [51 Me. 521 (1863)]. He may prevent its passing from his land in its natural flow. . . . He may erect structures upon his own land as high as he pleases without regard to its effect upon surface water, no matter how much others are disturbed by it."

See also *Pettengill v. Turo,* 159 Me. 350, 193 A.2d 367 (1963). The rule derives from the fundamental principle that a property owner may use his land as he pleases for all lawful purposes.

■ A major limitation on this right has been recognized when a *watercourse* has come into being, but the very acknowledgement of the limitation emphasizes the distinction between surface waterdrainage and a watercourse. As was clarified in *Morrison v. Bucksport & Bangor R. R. Co.,* supra at 356:

"A water course cannot be stopped up or diverted to the injury of other proprietors. There is a public or natural easement in such a stream, belonging to all persons whose lands are benefitted by it. The two things, surface water and watercourse, however, are not to be confounded. To constitute a water course, it must appear that the water usually flows in a particular direction; and by a regular channel, having a bed with banks and sides; and (usually) discharging itself into some other body or stream of water. It may sometimes be dry. It need not flow continuously; but it must have a well defined and substantial existence."

Plaintiffs argue that the evidence, here, raised a jury question whether a watercourse existed. However, plaintiffs' complaint asserted as its gravamen nothing concerning a watercourse but only that the manner of defendant's use of his own land interfered with the "natural drainage" from plaintiffs' land. Moreover, when plaintiffs first argued to the presiding Justice, at the close of all the evidence, that the evidence supported a theory of interference with a *watercourse,* the presiding Justice ruled that (1) neither plaintiffs' nor defendant's evidence was really directed to the question whether a watercourse actual-

ly existed and (2) in any event there was insufficient evidence to raise a jury question as to the existence of a watercourse.

■ We agree with the conclusions of the presiding Justice. An issue as to whether a watercourse existed was neither raised in the pleadings nor tried by the implied consent of the parties, and was not, therefore, open for jury consideration. Rule 15(b) M.R.Civ.P.; *Cushman v. Perkins,* Me., 245 A.2d 846, 851–852 (1968). True, one witness may have suggested in testimony that when a backing-up of water on, or a flooding of, plaintiffs' land occurred, the subsequent efforts of defendant to alleviate this condition were leading to the creation of a "watercourse" (the witness having used the term "watercourse" merely conclusorily without indicating any of the subsidiary facts to show whether he had a correct understanding of the legal concept of a "watercourse.") Yet, whether or not such conclusory evidence might be sufficient to raise a jury issue as to the existence of a "watercourse" within correct legal intendment, the testimony of the witness plainly gave no suggestion of the existence of a watercourse *prior* to defendant's construction of the barrier on his land. At most, then, what defendant obstructed was only the natural flow, or drainage, of surface water.

"[W]hen there is no watercourse, or stream of water, one cannot claim a right of drainage, or flow of water, from off his land, upon and through the land of another, merely because his land is higher than that of the other, and slopes towards it, so that the water which falls in rain upon it would naturally run over the surface in that direction." *City of Bangor v. Lansil,* 51 Me. 521, 525 (1863), quoting *Luther v. Winnissimet Co.,* 9 Cush., 171 (1851).

Plaintiffs also purport to rely on 17 M.R. S.A. § 2701 which provides:

"Any person injured in his comfort, property or the enjoyment of his estate by a common and public or a private nuisance may maintain against the offender a civil action for his damages, unless otherwise specially provided."

This statute, as we discern from its origin and history, was intended to apply to those nuisance actions presently delineated in 17 M.R.S.A. § 2802. See *Lyons v. Woodward,* 49 Me. 29 (1860); and R.S.1841, c. 164, §§ 1, 8. Section 2802 provides in part, as purportedly relevant here, that an actionable nuisance exists for the

> "obstructing or impeding, without legal authority, the passage of any navigable river, harbor or collection of water; corrupting or rendering unwholesome or impure the water of a river, stream or pond; [and] unlawfully diverting it from its natural course or state, to the injury or prejudice of others . . . ."

■ Plaintiffs can gain nothing in the instant case from the statutes. The phrase "obstructing or impeding . . . *the passage of any* navigable river, harbor or *collection of water*" is without applicability when, as here, the water was always in its diffuse surface-water state. The same is true of the provision for "unlawfully diverting *it* from *its natural course or state*", (emphasis supplied) since "it" plainly refers to what precedes: either a "collection of water", including a natural collection of water such as a "pond", or that which the law recognizes as a watercourse, such as a "river" or "stream." In this regard, see *Morrison v. Bucksport & Bangor R. R. Co.,* supra, at 356 where the Court explains that in legal contemplation the term "stream" or "brook" connotes a type of watercourse, as opposed to the flow of surface water over the face of the land.

The entry is:

*Appeal denied.*

*Judgment affirmed.*