2001 ME 104

**William and Barbara CHARLTON**

v.

**TOWN OF OXFORD et al.**

Supreme Judicial Court of Maine.

Argued: Feb. 14, 2001.
Decided: July 12, 2001.

---

9. *See* P.L.2001, ch. 390 (enacting 39–A M.R.S.A. § 224 to clarify the benefit calculation issues addressed in *Bernard* ).

Gregory P. Hansel, Esq., (orally), Ann R. Robinson, Esq., Joel H. Thompson, Esq., Preti, Flaherty, Beliveau, Pachios & Haley, LLC, Portland, for plaintiffs.

Elliott L. Epstein, Esq., (orally), Isaacson & Raymond, Lewiston, (for Carl Delekto), Geoffrey H. Hole, Esq., Bernstein,

Shur, Sawyer & Nelson, P.A., Portland, (for Town of Oxford), for defendants.

Panel: WATHEN, C.J., and CLIFFORD,* RUDMAN, DANA, SAUFLEY, ALEXANDER and CALKINS, JJ.

RUDMAN, J.

[¶ 1] William and Barbara Charlton appeal from a judgment entered in the Superior Court (Oxford County, *Gorman, J.*), after a nonjury trial in favor of the Town of Oxford, its Code Enforcement Officer, Rodney Smith, its Planning Board, and Carl Delekto. Finding no error, we affirm the judgment.

## I. BACKGROUND

### A. Procedural History

[¶ 2] Count I of the Charltons' amended complaint contained an appeal, pursuant to M.R. Civ. P. 80B, from the decision of the Oxford Zoning Board of Appeals ("ZBA"). Count II alleged that Delekto's construction constituted a nuisance pursuant to 30–A M.R.S.A. § 4302 and sought injunctive relief. Count III requested a declaratory judgment and injunctive relief against the Planning Board and Delekto. Count IV of the amended complaint requested a declaratory judgment finding that Delekto had violated various land use statutes and ordinances. Count V alleged negligence by Delekto and sought compensatory and punitive damages. Count VI demanded damages from Delekto for nuisance, pursuant to 30–A M.R.S.A. § 4302 and the common law.

---

* Although not available at oral argument, Justice Clifford participated in this opinion. *See* M.R.App. P. 12(a) stating "[a] qualified justice may participate in a decision even though not present at oral argument."

[¶ 3] The court first considered Count I, the 80B appeal from the refusal of the ZBA to hear the Charltons' appeal, concluding that it was untimely. The ordinance required that an appeal be filed within thirty (30) days of the issuance of the building permit to Delekto. *See* Oxford, Me., Code § 19(G)(4)(a)(1) (March 12, 1994). The permit was issued October 1, 1997; the appeal was taken August 5, 1998. The Superior Court (Oxford County, *Perkins, A.R.J.*) affirmed the decision of the ZBA. The Charltons did not appeal from the Superior Court's decision affirming the decision of the ZBA.

[¶ 4] The remaining counts in the Charltons' complaint were tried by the court without a jury. The court found in favor of the defendants on all counts in the complaint. The Charltons timely appealed and Delekto cross-appealed from that portion of the court's order that was adverse to him. Because we affirm, we do not reach the issues raised by Delekto's cross-appeal.

### B. Factual History

[¶ 5] The Charltons own land and a cottage located on Thompson Lake in Oxford. Delekto owns an adjacent parcel of land. On August 28, 1997, Delekto submitted a Shoreland Zoning Application to the Oxford Planning Board seeking to build a new structure; the application was approved that day. On October 1, 1997, the Town issued Delekto a building permit. Despite an ordinance requiring notification, the Town failed to notify the Charltons, who reside in Massachusetts, that Delekto had applied for, and was granted, a building permit.[1]

---

1. Section 19 of the Oxford Zoning Ordinance states in pertinent part:
   C. Procedure for Administering Permits
   . . . .
   2. For applications which require Planning Board review, the Planning Board

[¶ 6] The trial court, in its well-reasoned and thoughtful decision, found that Delekto's house, garage, and breezeway violated the permit issued by the Planning Board in several ways:

1. [T]he Ordinance mandates that a "replacement" structure within the Shoreline Zone cannot be more tha[n] 30% larger than the footprint or the volume of the nonconforming, existing building. Measurements taken by Richard Baker demonstrate that the shoreline floor area of the existing building was 632 square feet. Therefore, the shoreline floor area of the new building could only be 822 square feet under the Ordinance. According to Richard Baker, this building exceeds that by more than 1000 cubic feet. Mr. Baker also measured the volume of the existing building at 5412 cubic feet. Again based upon the Ordinance's 30% rule, the new building could be no larger than 7036 cubic feet. Plaintiff's exhibit 18.

2. The permit allowed Mr. Delekto to construct a 28' × 44', two-story house with a full foundation, a 28' × 40' garage on a slab, a 12' × 16' deck, and a 12' × 16' breezeway between the garage and the house. The breezeway exceeds the measurements allowed by the permit.

3. The permit required that the house be set back a minimum of ninety feet from the high water mark. Parts of the structure are approximately eighty-six feet from the high water mark.

4. The permit allows the structure to be no higher than 24 feet. It is 32 feet high at the garage. The height of the house is unknown, but any measurements taken on the non-water side of the house must be increased by 3.5 feet to accommodate the fill Mr. Delekto added to the land. Ordinance definition of "height of a structure," p. 72.

5. There are more than 492 square feet within 90 feet of the high water mark.

6. More than 492 square feet of the structure are within 100 feet of the high water mark.

[¶ 7] The court also found other violations with the building construction and site:

1. The garage and the breezeway both have full foundations. The permit does not provide for a full foundation for any structure except the "house." The basement under the garage is currently being used to store building materials, snowmobiles, and water craft. The basement under the breezeway will be used as living space.

2. Mr. Delekto built a drainage ditch that also serves as a retaining wall immediately next to the boundary between his land and the Charltons' land. The ditch/retaining wall is a structure pursuant to the definition contained within the Ordinance:

[A]nything built for the support, shelter or enclosure of persons, animals, goods or property of any kind, together with anything constructed or erected with a fixed location on or in the ground, exclusive of fences[,] streets and sidewalks. The term includes structures temporarily or permanently located, such as decks and satellite dishes.

shall approve, approve with conditions, or deny the application within 35 days except that:

. . . .

c. Before a public hearing or rendering a decision, the Planning Board shall notify property owners within 500 feet, the fire chief, the police chief, the town manager,

. . . .

Oxford, Me., Code § 19(C)(2)(c) (March 12, 1994).

Ordinance, p. 76. The permit requires that there be a minimum of twenty-five feet between any structure and the boundary line.

3. As noted above, the permit granted to Mr. Delekto did not grant permission for the construction of this ditch. In addition, Mr. Delekto did not obtain a permit from the DEP as required by 38 M.R.S.A. § 480–C.

4. The Ordinance allows for some clearing of trees and brush to allow for construction, but no greater than 10,000 square feet. Ordinance § 17(I)(3)[.] Before constructing his home, Delekto cleared a quadrangle measuring 100′ × 85′ × 167′ × 118′. Plaintiff exhibit 18.

5. The permit allowed for a two-story house and a garage on a slab. The house site slopes down to the water. Rather than remove earth at the road side to create a level area, Mr. Delekto built up that side, and constructed a basement under the house, the breezeway and the garage so that it is entirely above grade on the water side. As a result, the house and the garage rise three stories above the ground at the water side.

6. During the trial, Mr. Delekto installed a 4′ × 5′ concrete slab next to the garage to allow for the installation of a generator. He was unable to state whether the slab was closer than twenty-five feet to the boundary line, and asserted that he did not believe he needed a permit to install the slab.

7. The Ordinance states that terms not defined therein "shall have the custom-

ary dictionary meaning." Ordinance, § 20(A)(2). The common dictionary meaning of "breezeway" is a roofed open-sided passageway connecting two buildings. Oxford American Dictionary 1980. The breezeway constructed by Mr. Delekto is entirely enclosed, has a full basement, and houses the main kitchen, laundry, and a full bath.

[¶ 8] The trial court, in its judgment and order, noted that Oxford, Me., Code § 19(G)(4)(a)(1) (March 12, 1994) "allows the Charltons to appeal every decision made by the CEO concerning Mr. Delekto's property." Subsequent to the trial court's decision but prior to the oral argument on this appeal, an occupancy permit was issued to Delekto. The Charltons, however, did not appeal the issuance of the occupancy permit.

## II. DISCUSSION

[¶ 9] The Charltons contend that they have suffered an injury to the comfort, use, and enjoyment of their estate and that, consequently, they may bring statutory causes of action, pursuant to 17 M.R.S.A. § 2701[2] and 30–A M.R.S.A. § 4302[3] for nuisance, as well as a common law cause of action for nuisance. The Charltons further assert that the trial court committed clear error in rejecting the testimony of their expert witness and in finding that they failed to prove that they suffered damages as a result of Delekto's construction.

2. **§ 2701. Action for damages caused by nuisance**

Any person injured in his comfort, property or the enjoyment of his estate by a common and public or a private nuisance may maintain against the offender a civil action for his damages, unless otherwise specially provided.

17 M.R.S.A. § 2701 (1983).

3. **§ 4302. Nuisances**

Any property or use existing in violation of a municipal land use ordinance or regulation is a nuisance.

30–A M.R.S.A. § 4302 (1996).

## A. Statutory Causes of Action

### 1. *30–A M.R.S.A. § 4302*

### A. Legislative History

[¶ 10] "We review the interpretation of a statute *de novo* for errors of law." *In re Wage Payment Litig.*, 2000 ME 162, ¶ 4, 759 A.2d 217, 220 (citation omitted). "When construing a statute, we seek to give effect to the legislative intent by examining the plain meaning of the statutory language." *Id.* at 220–221 (citation omitted). When the plain meaning of the text does not resolve an interpretative issue, "we then consider the statute's history, underlying policy, and other extrinsic factors to ascertain legislative intent." *Id.* at 221 (citation omitted). When discerning legislative intent, "we interpret the section of the statute in the context of the statutory scheme in which it is found." *Id.* (citation omitted).

[¶ 11] 30–A M.R.S.A. § 4302 states that "[a]ny property or use existing in violation of a municipal land use ordinance or regulation is a nuisance." Therefore, based on the clear, unambiguous language of 30–A M.R.S.A. § 4302. Delekto committed a statutory nuisance because the trial court found that he had violated the Town's land use ordinance. The question then, is whether, given that Delekto's construction constituted a nuisance, the Charltons have a private right of action for a nuisance statutorily created by the enactment of 30–A M.R.S.A. § 4302.[4]

[¶ 12] The language of 30–A M.R.S.A. § 4302 can be traced back to P.L. 1855, ch. 149, and R.S. ch. 3, § 27 (1857).[5] In 1860, R.S. ch. 3, § 27 was amended by P.L. 1860, ch. 144. This amendment was codified at R.S. ch. 3, § 40 (1871).[6] This statute was located in the part of the Maine Revised Statutes entitled. "Town and City By–Laws and Ordinances." Notably, R.S. ch. 3, § 40 contains a cross-reference to ch. 17, § 26, the then-nuisance statute. That statute states that the nuisance may be abated, removed, or altered and "all expenses thereof shall be repaid to the town within thirty days ...." R.S. ch. 17, § 26 (1871).

[¶ 13] Our review of the legislative history shows that, at one point, the land use statutes and nuisance statutes were, in fact, read in tandem. A violation of a land

---

4. We note that in its emergency preamble to legislation reenacting § 4302, the Legislature stated that the reenactment was "urgently needed ... to preserve the ability of *local government* to effectively address issues of local concern[.]" (emphasis added). P.L.1989, ch. 104, § 45.

5. Chapter 149, entitled: "An act giving further powers to cities and towns to pass by-laws and ordinances[,]" states, in relevant part:

Sect. 3. Said cities and towns are hereby further authorized to adopt such regulations in regard to the erection of wooden buildings ... and may provide penalties necessary for the due execution of such regulations; and any building erected in violation of the by-laws and ordinances of any city or town shall be deemed to be a nuisance and shall be liable to all the pro-

ceedings and penalties provided by law in case of nuisance.
P.L. 1855, ch. 149, § 3.

6. Section 40 states, in relevant part:

Sec. 40. Towns, cities, and village corporations may make such by-laws or ordinances as they think proper, not inconsistent with the laws of the state, and enforce them by suitable penalties, for the purposes and with the limitations following:

....

Seventh. Respecting the erection of wooden buildings therein, or buildings the exterior of which shall be in part of wood, and defining their proportions and dimensions; and any building erected contrary to a by-law or ordinance adopted under this specification shall be deemed a nuisance and dealt with accordingly.
R.S. ch. 3, § 40 (1871).

use ordinance was actionable by the Town pursuant to Chapter 17, which is now Title 17. As this legislative history reflects, the early nuisance statutes, however, were enacted solely for the benefit of the towns as an enforcement mechanism. Conversely, the early nuisance statutes did not provide any private remedy to abutting land owners.

### B. Implied Right of Action

[¶ 14] The trial court found that "a nuisance arising from the violation of a zoning or land use ordinance must be considered a 'public' nuisance." The court concluded that 30–A M.R.S.A. § 4302 does not provide a private cause of action in zoning or land use violation situations because "public problems are not abated by individuals, but rather by public officers...."

[¶ 15] Because section 4302 does not state that a private right of action exists, we must determine if such a right of action can be implied. We are hesitant to imply a private right of action where the legislature has not expressly stated that a cause of action exists. In *Larrabee v. Penobscot Frozen Foods, Inc.,* 486 A.2d 97 (Me.1984), we noted that when the Legislature deems it "essential that a private party have a right of action, it has expressly created one." *Larrabee,* 486 A.2d at 101 (citation omitted). Therefore, absent express language creating a private right of action, the key to determining whether there is an implied cause of action lies in the legislative intent, expressed either in the statute or the legislative history. *In re Wage Payment Litig.,* 2000 ME 162, ¶ 7, 759 A.2d at 222.

[¶ 16] The language in section 4302, however, does not by itself confer a private right of action for nuisance on the Charltons. Thus, we must resort to the canons of statutory interpretation to discern the legislative intent behind the enactment of section 4302. In determining legislative intent, we look to that section of the statutory scheme in which section 4302 is found. Section 4302 is located in Chapter 187, which deals with municipal "planning and land use regulation[s]." *See* 30–A M.R.S.A. § 4301 et seq. Chapter 187 also contains section 4452, which expressly provides mechanisms for the enforcement of land use laws and ordinances. Section 4452 states in pertinent part:

**§ 4452. Enforcement of land use laws and ordinances**

. . . .

**2. Liability for violations.** Any person, including, but not limited to, a landowner, the landowner's agent or a contractor, who violates any of the laws or ordinances set forth in subsection 5 or 6 is liable for the penalties set forth in subsection 3.

. . . .

**4. Proceedings brought for benefit of municipality.** All proceedings arising under locally administered laws and ordinances shall be brought in the name of the municipality. All fines resulting from those proceedings shall be paid to the municipality.

**5. Application.** This section applies to the enforcement of land use laws and ordinances or rules which are administered and enforced primarily at the local level, including:

. . . .

G. Local land use ordinances adopted pursuant to section 3001;

H. Local building codes adopted pursuant to 3001 and 3007;

. . . .

Q. Shoreland zoning ordinances adopted pursuant to Title 38, sections 435 to 447, including those which were state-imposed;

. . . .

30–A M.R.S.A. § 4452 (1996 & Supp.2000).

[¶ 17] The Oxford zoning ordinance was adopted "pursuant to Title 30A [sic] Section 3001, 4311–4353 and Title 38 Sections 435–449 . . . ." Oxford, Me., Code § 2 (March 12, 1994). Because the Oxford zoning ordinance was adopted pursuant to section 3001, section 4452 makes it clear that any actions brought to enforce provisions of the zoning ordinance, which is the case here, must be brought by the Town. An action to recover damages or to seek injunctive relief pursuant to section 4302 is an action to enforce an ordinance within the meaning of section 4452. Section 4452 specifically provides that all enforcement actions shall be brought in the name of the municipality for its benefit. Accordingly, only the Town of Oxford, and not the Charltons, may bring such an action.[7]

[¶ 18] Finally, as we noted in *Larrabee,* "if our Legislature had intended that a private party have a right of action pursuant to 30–A M.R.S.A. § 4302, it would have either expressed its intent in the statutory language or legislative history or, more likely, expressly enacted one." *Larrabee,* 486 A.2d at 101.

[¶ 19] Although Delekto, an abutting land owner, violated a land use ordinance and committed a nuisance pursuant to 30–A M.R.S.A. § 4302, the Legislature, in enacting section 4302, did not intend to provide the Charltons with a cause of action for nuisance. Instead, by enacting 30–A M.R.S.A. § 4452, it provided the Town with an enforcement mechanism. Specifically, section 4452 gives a municipality, and only a municipality, the authority to enforce land use regulations. Accordingly, only municipalities may bring an action for violations of such regulations.[8] *Herrle v. Town of Waterboro,* 2001 ME 1, ¶ 11, 763 A.2d 1159, 1162 (recognizing that private citizens do not have standing to initiate proceedings to enforce municipal zoning regulations). The trial court, therefore, did not err in holding that "the legislature must have intended that no such remedy existed pursuant 30–A M.R.S.A. § 4302."

[¶ 20] The Charltons also argue that 17 M.R.S.A. § 2701 and 30–A M.R.S.A. § 4302 must be read *in pari materia* because they deal with the same subject matter—nuisance. "Statutes are considered to be *in pari materia* when they relate to the same person or thing, to the same class of persons or things, or have the same purpose or object." 2B NORMAN J. SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 51.03 (5th ed.1992) (citations omitted). "Characterization of the object or purpose is more important than characterization of subject matter in determining whether different statutes are closely enough related to justify interpreting one in light of the other." *Id.* (citation omitted).

[¶ 21] 17 M.R.S.A. § 2701 falls within Chapter 91, which deals with the law of

---

7. Section 4452(3)(E) recognizes that a municipality may have contributed to the violation by providing the violator with incorrect information or *by failing to take timely action,* and therefore, encourages a court to consider such inaction on the part of the municipality when setting a penalty for violations of land use laws and ordinances. *See* 30–A M.R.S.A. § 4452(3)(E) (1996).

8. The Charltons did have the right to challenge Delekto's actions—an appeal to the ZBA, an appeal from the ZBA to the Superior Court, and an appeal from the Superior Court to us. The Charltons did appeal the issuance of Delekto's building permit. The ZBA found that appeal untimely and the Superior Court agreed. The Charltons, however, did not appeal from the Superior Court's decision, nor did they challenge the issuance of the certificate of occupancy even though the trial court made detailed findings of Delekto's numerous violations of the applicable regulations.

nuisance. 30–A M.R.S.A. § 4302 falls within Chapter 187, which deals with "planning and land use regulation." While both statutes deal with a similar "subject"—i.e., nuisance, the legislative "purpose" of 30–A M.R.S.A. § 4302 is to provide enforcement mechanisms for towns, and not remedies for private citizens. Therefore, contrary to the Charltons' assertions, 17 M.R.S.A. § 2701 and 30–A M.R.S.A. § 4302 cannot be read *in pari materia* as they do not relate to the "same subject matter," nor do they have the same "purpose."

### 2. *17 M.R.S.A. § 2701*

[¶ 22] The Charltons next argue that they have a cause of action pursuant to 17 M.R.S.A. § 2701 because Delekto's structure violates the Town's zoning ordinance and certain Maine statutes.

[¶ 23] Title 17 M.R.S.A. § 2701 states that "[a]ny person injured in his comfort, property or the enjoyment of his estate by a common and public or a private nuisance may maintain against the offender a civil action for his damages, unless otherwise specially provided." 17 M.R.S.A. § 2701 (1983). The question then, is whether section 2701 applies only to those nuisances delineated in 17 M.R.S.A. § 2741 (Supp. 2000) (common nuisances) and 17 M.R.S.A. §§ 2791—2806 (1983 & Supp.2000) (particular nuisances) or whether plaintiffs can bring an action based solely on the language of section 2701.

[¶ 24] We have held that "[17 M.R.S.A. § 2701] ... was intended to apply to those nuisance actions presently delineated in 17 M.R.S.A. § 2802 [miscellane-ous nuisances]." *Johnson v. Whitten*, 384 A.2d 698, 702 (Me.1978) (citation omitted). The Charltons, however, argue that *Johnson* is inapplicable to the case at bar. The Charltons' arguments are unpersuasive. They argue, for example, that "the legislature was not required to place 30–A M.R.S.A. § 4302 in Title 17 rather than with its companion land use statutes in order to give it its full force and effect." It is true, that if the legislature so intends, different provisions in disparate acts, dealing with similar issues, may be construed together. However, "when statutory language has acquired a consistent and entrenched meaning through prior judicial decisions, we will not abandon our traditional interpretation of that language unless there is expressive statutory language plainly showing a legislative intent to abrogate those prior decisions." *Tripp v. Phillips Elmet Corp.*, 676 A.2d 927, 930–31 (Me.1996) (citation omitted). Here, the Charltons can point to no such intent on behalf of the legislature to abrogate our holding in *Johnson*, and in fact, none can be found. Their argument, therefore, lacks merit.

[¶ 25] *Johnson* clearly establishes that statutory causes of action pursuant to Title 17 M.R.S.A. § 2701 are limited to those nuisances delineated in the statute. *Johnson*, 384 A.2d at 702; *see also State v. Rees*, 2000 ME 55, ¶ 4, 748 A.2d 976, 978 (stating that "[w]e do not disturb a settled point of law unless 'the prevailing precedent lacks vitality and the capacity to serve the interests of justice....'" (quoting *Bourgeois v. Great N. Nekoosa Corp.*, 1999 ME 10, ¶ 5, 722 A.2d 369, 371)).[9] The

---

9. The Charltons assert that *Levasseur v. Dubuc*, 229 A.2d 201 (Me.1967) supports their claim for a statutory cause of action for private nuisance under 30–A M.R.S.A. § 4302. Such is an overreading of *Levasseur*. In *Levasseur*, we held,

[i]n view of the fact that the [municipal ordinance in question], and the enabling act under which it was adopted, are both silent as to the provision that a violation constitutes a nuisance, we hold that [the prede-

Superior Court, therefore, did not err by finding that "[t]here is no private nuisance in this case. Title 17 M.R.S.A. § 2701 permits private actions for damages caused by the nuisances listed in sections 2791 through 2805."

[¶ 26] The Charltons also argue that, because Delekto's violations of the Oxford Zoning Ordinance constitute a common or public nuisance, they can recover damages pursuant to section 2701. Relying on *Sproul v. Town of Boothbay Harbor,* 2000 ME 30, 746 A.2d 368, they assert that "setback violations are a sufficient adverse consequence to give an abutter a particularized injury." The trial court found, however, that the Charltons did not incur any special or peculiar injury because of Delekto's violations.

[¶ 27] To establish a cause of action for common or public nuisance, a party must show that he has "suffered therefrom some special and peculiar damages other and greater than those sustained by the public generally." *Brown v. Watson,* 47 Me. 161, 162 (1859); *see also Penley v. City of Auburn,* 85 Me. 278, 27 A. 158 (1893). "For an injury to a particular person, as by a common nuisance, no matter how inconsiderable the injury, he may maintain an action." *Brown,* 47 Me. at 164 (citation omitted); *see also Hanlin Group, Inc. v. Int'l Minerals & Chem. Corp.,* 759 F.Supp. 925, 935 (D.Me.1990).

[¶ 28] A review of the land use violations found by the trial court establishes that the only violation that arguably could have caused the Charltons special or peculiar injury is the installation of the ditch/retaining wall. The trial court found,

however, that "the Charltons have failed to prove, by a preponderance of the evidence, that they suffered any special damage as a result of the placement of the ditch/retaining wall." We review the trial court's finding of fact for clear error, and will "uphold the trial court's findings unless there is no evidence to support them." *Sargent v. Tomhegan Camps Owners Ass'n,* 2000 ME 58, ¶ 5, 749 A.2d 143, 144 (citing *Sturtevant v. Town of Winthrop,* 1999 ME 84, ¶ 9, 732 A.2d 264, 267).

[¶ 29] The evidence shows that, before Delekto constructed the ditch/retaining wall, the Charltons had problems with "a little bit of runoff" from Delekto's property. Prior to the building of the ditch/retaining wall, Mr. Charlton and Delekto had a brief conversation regarding the run-off from Delekto's property onto the Charltons' property. At that time, Mr. Charlton believed that installing a "silt fence" would stop the run-off from spilling onto the Charltons' property. Mr. Charlton testified that there have been, on at least two occasions, water running from Delekto's property onto the Charltons' property since Delekto built the ditch/retaining wall. Mrs. Charlton also opined that the Charltons' property had diminished in value because of Delekto's construction, land clearing, and zoning violations. The Charltons contend, pointing to several land use cases, that Delekto's land use violations resulted in "particularized injury" sufficient to support their nuisance claim.

[¶ 30] In municipal land use cases, " 'particularized injury' is met when the judgment adversely and directly affects the party's property, pecuniary or personal

cessor of section 4302] is not effective under the legal aspects of the instant case. *Levasseur,* 229 A.2d at 203. *Levasseur* does not, however, imply the reciprocal. *Johnson,* 384 A.2d 698 (Me.1978), decided eleven years after *Levasseur,* at least by implication, pre-

cludes an argument that by stating that a violation constitutes a nuisance the Legislature intended to create a right of action. Heretofore, *Levasseur* has never been cited in our case law to support a private right of action for a statutorily created nuisance.

rights." *Anderson v. Swanson*, 534 A.2d 1286, 1288 (Me.1987) (quoting *New England Herald Dev. Group v. Falmouth*, 521 A.2d 693, 695 (Me.1987)). A high degree of proof is not required to establish standing to appeal from a Zoning Board of Appeals decision. *Id.*

■ [¶ 31] Conversely, to show "special or particularized injury" in a nuisance case, a plaintiff must show that they have suffered an actual injury that is "different from those [injuries] suffered by the community at large...." *Tuell v. Inhabitants of Marion*, 110 Me. 460, 463, 86 A. 980, 981 (1913). Therefore, while Delekto's violations are such that the Charltons may have suffered "particularized injury" sufficient to provide standing to appeal from a decision of the ZBA, which they did, the violations have not resulted in "particularized injury" such that they can maintain a suit for nuisance because they have not "sustained special damages different from those suffered by the community,...." *Tuell*, 110 Me. 460, 463, 86 A. 980, 981 (1913). The Charltons did not produce evidence to establish that they have suffered any pecuniary loss, or injuries, to their person or property because of Delekto's land use violations.

■ [¶ 32] The Charltons also argue that we have recognized "aesthetic injury" to an abutter and that the trial court's holding that "aesthetic concerns alone would not give rise to a determination that the Charltons have been damaged" is incorrect as a matter of law. Again, however, the Charltons buttress their arguments by looking at a land use case dealing with standing issues. In that case, we held that, "due to the proximate location of [the abutter's] property together with the potential for [a]esthetic or noise injury from the construction or use of the double deck, [the abutter] has *sufficient standing* to seek judicial review of the action of the Zoning Board of Appeals in granting a variance." *Forester v. City of Westbrook*, 604 A.2d 31, 32 (Me.1992) (emphasis added). The issue here, however, is one of nuisance, not standing; the standard for nuisance requires a higher degree of harm. Therefore, *Forester* and the other ZBA standing cases are inapposite to the facts of this case.

■ [¶ 33] The Charltons confuse the nature of injury necessary to establish standing with the requirement of demonstrating actual harm in order to recover damages in a nuisance claim. Contrary to the Charltons' arguments, we have specifically held that an "aesthetic injury" alone is not an infringement of any legal rights. We have stated, for example, that "[a] neighbor's building on his own land, by its ugliness of architecture or by its mere proximity, may lessen one's enjoyment of his own residence and lessen its market value: ... and yet no legal right be infringed." *Whitmore v. Brown*, 102 Me. 47, 57, 65 A. 516, 520 (1906). We further noted, in *Whitmore*, that the law does not "recognize as a cause of action the annoyance caused by the proximity or ugliness of otherwise harmless structures upon the land of another." *Id.*, 102 Me. at 59, 65 A. at 521. *Whitmore* remains good law; the law of the State of Maine does not recognize a cause of action for an "otherwise harmless structure[] upon the land of another[,]" regardless of how unsightly or overbearing the structure may be. *See id.*

[¶ 34] The Charltons, citing *Brown v. Watson*, 47 Me. 161 (1859), argue that the standard for what constitutes special injury is low. *See Brown*, 47 Me. at 164 (stating that "no matter how inconsiderable the injury, he may maintain an action."). In this case, however, it is not that the Charltons have suffered a *nominal* or *de minimis* injury, rather, it is that they have not suffered a quantifiable injury, such that the value of their property has

been diminished or that the Delekto property has interfered with the use and enjoyment of their property. Moreover,

> [w]hen defendant's conduct involves mere physical discomfort or mental annoyance, there is somewhat more difficulty in deciding when the interference is substantial and unreasonable justifying a recovery for damages. Probably a good working rule would be that the annoyance cannot amount to unreasonable interference until it results in a depreciation in the market or rental value of the land.

W. Page Keeton et al., Prosser and Keeton On The Law Of Torts § 88 at 627 (5th ed.1984).

[¶ 35] Because the Charltons failed to establish that they suffered a special injury, the Superior Court did not err in finding that the Charltons failed to submit sufficient evidence to support their statutory nuisance claim.

## B. Common Law Nuisance

[¶ 36] The Charltons argue that they have a common law cause of action for nuisance because of Delekto's construction. We have recently recognized the existence of a common law cause of action for nuisance, stating that " '[t]he essence of a private nuisance is an interference with the use and enjoyment of land.' " *Town of Stonington v. Galilean Gospel Temple*, 1999 ME 2, ¶ 15, 722 A.2d

1269, 1272 (quoting W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 87 at 619 (5th ed.1984)). We note that the following elements are necessary to satisfy a common law cause of action for private nuisance:

(1) The defendant acted with the intent of interfering with the use and enjoyment of the land by those entitled to that use;

(2) There was some interference with the use and enjoyment of the land of the kind intended, although the amount and extent of that interference may not have been anticipated or intended;

(3) The interference that resulted and the physical harm, if any, from that interference proved to be substantial ... The substantial interference requirement is to satisfy the need for a showing that the land is reduced in value because of the defendant's conduct; [10]

(4) The interference that came about under such circumstances was of such a nature, duration or amount as to constitute unreasonable interference with the use and enjoyment of the land. ...

W. Page Keeton et al., Prosser And Keeton On The Law Of Torts § 87 at 622–23 (5th ed.1984).

[¶ 37] The Charltons satisfied the first element of common law private nuisance because Delekto, by his code violations, acted with the intent of interfering with their use and enjoyment of the land.[11]

---

10. "The interference must be substantial and unreasonable. Substantial simply means a significant harm to the plaintiff and unreasonably [sic] means that it would not be reasonable to permit the defendant to cause such an amount of harm intentionally without compensating for it." W. page keeton et al., prosser and keeton on the law of torts § 88 at 626 (5th ed.1984). However, "[w]hen defendant's conduct involves mere physical discomfort or mental annoyance, there is somewhat more difficulty in deciding when the interference is

substantial and unreasonable justifying a recovery for damages. Probably a good working rule would be that the annoyance cannot amount to unreasonable interference until it results in a depreciation in the market or rental value of the land."

11. In regard to the intentional interference requirement, it has been noted that "often the situation involving a private nuisance is one where the invasion is intentional merely in the sense that the defendant has created or continued the condition causing the interfer-

[¶ 38] Regarding the second element of common law nuisance, there has, arguably, been some interference with the Charltons' use and enjoyment of their property because Delekto's violations of the 25–foot set-back provision encroached upon the Charltons' privacy. The Charltons, however, are unable to satisfy the third element for common law nuisance because they did not produce sufficient evidence that their property's market or rental value had been diminished. *See supra* note 10.

[¶ 39] To establish their damages claim, the Charltons called Jonathan Beal, a real estate appraiser, to testify regarding the impact Delekto's construction had on their property. The trial court chose, however, to reject Beal's valuation testimony as "he acknowledged that his valuation method was not sanctioned by his peers." *See Striefel v. Charles–Keyt–Leaman P'ship*, 1999 ME 111, ¶ 7, 733 A.2d 984, 989 (noting that we give due regard to the trial court's determination of credibility of witnesses and weight given to the evidence).

[¶ 40] The trial court's finding that the Charltons suffered no damages as a result of the ditch/retaining wall is a finding of fact that we review for clear error. *Dep't of Human Services ex rel. Hampson v. Hager*, 2000 ME 140, ¶ 30, 756 A.2d 489, 495 (citation omitted). "A trial court's factual determinations are 'clearly erroneous' only if there is no credible evidence on the record to support them." *Id.* (citation omitted). Neither of the Charltons testified regarding how much, if any, their property value was diminished by Delekto's actions. Moreover, given Beal's acknowledgement that "sometimes when . . . a large, new, expensive home [is built] next to a small, older, less expensive home, [ ]

the impact of the new construction on the old one will be to raise the value on the old one[,]" we cannot say that the trial court's findings are clearly erroneous.

The entry is:

Judgment affirmed.

CALKINS, J., with whom DANA and ALEXANDER, JJ., join, concurring.

[¶ 41] I concur in the result, but I write separately because I think that it is unnecessary for the Court to determine whether 17 M.R.S.A. § 2701 or 30–A M.R.S.A. § 4302 provides a cause of action for the relief sought by the Charltons. Even assuming that there is a cause of action, there is no question that the Charltons must demonstrate that they have been damaged in order to obtain relief. The trial court found that the Charltons were not damaged, and that finding is supported by the evidence. That finding alone disposes of this case. The discussion of the availability of a cause of action is unnecessary to a disposition of this appeal.

---

ence with full knowledge that the harm to the plaintiff's interests are *occurring* or are substantially certain to follow." W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 87 at 624–25 (5th ed.1984).