STATE OF MAINE

YORK, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-02-032

GAB - YOR - AP- 12/12/2002

LISA E. ROCHE,

Petitioner

v.                                   **ORDER**

DONALD L. GARBRECHT
LAW LIBRARY

DEC 17 2002

MAINE BOARD OF
LICENSURE IN MEDICINE,

Respondent

Pursuant to M.R.Civ.P. 12(b)(6), the State of Maine Board of Licensure in Medicine has asked this court to dismiss Lisa E. Roche's M.R.Civ.P. 80C Petition for Review of Final Agency Action. Following hearing, the Motion to Dismiss is Granted.

## FACTS

Petitioner Lisa E. Roche, Esq. is a licensed attorney in the State of Maine. In the present matter, she is representing herself *pro se*.[1] Dr. Dora Mills, M.D., is a licensed physician in the State of Maine with a Masters degree in Public Health. Dr. Mills is also the Director of the Bureau of Health within the Department of Human Services for the State of Maine. One of Dr. Mills' official duties consists of compiling medical statistics for the State. In February 2002, the Petitioner made Dr. Mills aware of discrepancies in Maine's 1997-1999 vital statistics for induced abortions. The Petitioner contends that Dr. Mills did not correct these statistics or investigate the doctors who were responsible for reporting the inaccuracies.

On April 2, 2002, the Petitioner filed a complaint with the Maine Board of Licensure in Medicine (Respondent) against the medical license of Dr. Mills based on

---

[1] The Petitioner has provided this court with copies of her correspondence with the Respondent in which she represents herself as the President of Women's Investigative Network, a non-profit corporation.

the abovementioned incorrect statistics and the possibility that the doctors reporting these statistics were involved in double-billing or insurance fraud or both. Later that month the Respondent informed the Petitioner that no action would be taken against Dr. Mills because the Respondent only had jurisdiction over her duties as a physician and not as an administrator. As a result of the Respondent's failure or refusal to act, the Petitioner filed a Rule 80C Petition, claiming, amongst other things, that she was harmed because she was unable to determine which medical doctors were competent, law abiding, and in good standing with the Respondent.

## DISCUSSION

This case came about because the Petitioner was dissatisfied with the way Dr. Mills handled her request to correct abortion statistics. Hence, the Petitioner filed a complaint with the Respondent, which has "[t]he power to license and to set standards of practice for physicians and surgeons *practicing medicine* in Maine." 32 M.R.S.A. § 3269(3) (2002) (emphasis added). Consequentially, the Respondent "shall investigate a complaint, on its own motion or upon receipt of a written complaint filed with the [Respondent], regarding noncompliance with or violation of [the chapter concerning the Board of Licensure in Medicine] or any rules adopted by the [Respondent]." 32 M.R.S.A. § 3282-A(1) (2002).

The Respondent contends that it had no jurisdiction over Dr. Mills' administrative actions, which were unrelated to the practice of medicine. In addition, the Respondent argues that the Petitioner lacks standing to obtain judicial review because she was not a "person aggrieved" within the meaning of 5 M.R.S.A. § 11001(2) (providing in part that "any person who is aggrieved by final agency action shall be entitled to judicial review thereof in the Superior Court"). In other words, according to the Respondent, the Plaintiff was not directly and personally injured by Dr. Mills'

2

actions and therefore she did not have standing because her injuries were too abstract and speculative.

The Petitioner replies that Dr. Mills was a public health physician, who was practicing public health medicine as a State Health Officer and as the Director of the Bureau of Health. Thus, the Respondent had jurisdiction over Dr. Mills, who evidenced a lack of ability to discharge her duties as a physician according to the American Medical Association (AMA) Code of Ethics. The Petitioner adds that the Petitioner had standing because her legal rights were affected by a relevant statute and she was a taxpayer with a direct interest in seeing that governmental funds were not wasted.

Before assessing the issue of the Petitioner's standing, this court must first determine whether Dr. Mills' actions constituted the practice of medicine. At the motion hearing before this court on November 26, 2002, the Petitioner credibly argued that Dr. Mills used her knowledge of medicine to compile abortion statistics. In fact, Dr. Mill's job description was premised in part on the condition that she was a licensed physician. 22 M.R.S.A §1 (2002). Nonetheless, this court must look to the Legislature's definition of the practice of medicine:

> Unless licensed by the [Respondent], an individual may not practice medicine or surgery or a branch of medicine or surgery or claim to be legally licensed to practice medicine or surgery or a branch of medicine or surgery within the State by diagnosing, relieving in any degree or curing, or professing or attempting to diagnose, relieve or cure a human disease, ailment, defect or complaint, whether physical or mental, or of physical and mental origin, by attendance or by advice, or by prescribing or furnishing a drug, medicine, appliance, manipulation, method or a therapeutic agent whatsoever or in any other manner unless otherwise provided by statutes of this State.

32 M.R.S.A. § 3270 (2002).

When construing the statute above, this court must examine the plain meaning of the statutory language so as to give effect to legislative intent, which this court must

3

interpret within the context of the relevant statutory scheme. <u>Charlton v. Town of Oxford</u>, 2001 ME 104, ¶10, 774 A.2d 366, 371. The plain meaning of the statute defining the practice of medicine applies to diagnosing, relieving and curing human diseases, mental or physical, and does not apply to the compiling of statistics for a governmental agency, even if medical knowledge was used in the compilation. *See* 32 M.R.S.A. § 3270 (2002). Because Dr. Mills' actions related to compiling abortion statistics and did not fall within the statutory meaning of the practice of medicine, the Respondent lacked jurisdiction to hear the Petitioner's complaint. Therefore, the Respondent could not seek to discipline Dr. Mills for violating a standard of professional behavior, such as a provision in the AMA Code of Ethics, under 32 M.R.S.A. § 3282-A(2)(F).[2]

For reasons mentioned above, this court agrees with the Respondent that the Respondent did not have jurisdiction over Dr. Mills' actions and hence there is no need to address the issue of the Petitioner's standing. WHERFORE this court shall **GRANT** the Respondent's Motion to Dismiss.

This order may be incorporated in the docket by reference.

Dated: December 12, 2002

G. Arthur Brennan
Justice, Superior Court

```
Lisa E. Roche, Esq.  -  PL
Ruth E. McNiff, AAG   -  DEF
```

---

[2] 32 M.R.S.A. § 3282-A(2)(F) provides: "A licensee is considered to have engaged in unprofessional conduct if the licensee violates a standard of professional behavior that has been established in the practice for which the licensee is licensed."