2004 ME 144

**In re ADRIAN D. et al.**

Supreme Judicial Court of Maine.

Submitted on Briefs: July 9, 2004.

Decided: Nov. 30, 2004.

 

G. Steven Rowe, Attorney General, Katherine Greason, Asst. Atty. Gen., Geoffrey P. Goodwin, Asst. Atty. Gen., Augusta, for appellee.

Wayne Doane, Exeter, Guardian ad Litem.

Margaret Shalhoob, Bangor; Peter Bos, Gray & Palmer, Bangor, for fathers.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

LEVY, J.

[¶ 1] The mother of Adrian D. and Diamond D. appeals from judgments of the District Court (Bangor, *Gunther, J.*) concluding that two of her children were in jeopardy to their health and welfare, and placing one of them in the custody of the Department of Human Services.[1] The mother contends that DHS did not present sufficient evidence to support the court's jeopardy findings. We disagree and affirm the judgments.

## I. BACKGROUND

[¶ 2] In September of 2003, DHS petitioned for a child protection order on behalf of Adrian, Benjamin, and Diamond D.[2] DHS did not seek a preliminary protection order, and the children remained in their mother's custody pending a jeopardy hearing. After the hearing, the court found Adrian, age nine, and Diamond, age one, in jeopardy. The court found that the mother placed Adrian in jeopardy because of the following circumstances:

(1) Chronic failure to follow up on medical issues. (2) Failure to address seri-

---

Laurie Anne Miller, Bangor, for appellant.

1. In 2004, the Legislature established the Department of Health and Human Services, which has subsumed the Department of Human Services and the Department of Behavioral and Developmental Services. P.L. 2004, ch. 689 (effective July 1, 2004).

2. Benjamin is not a part of this appeal because the District Court entered judgment as a matter of law in the mother's favor regarding him.

ous behavioral problems or to try to assess cause. (3) Inadequate supervision to [and] after school. (4) Puts too much responsibility on Adrian [and] doesn't respond when he fails to achieve goals (school attendance/performance/loose awareness of after school).

With regard to Diamond, the court found that jeopardy resulted from:

(1) [The mother's c]hronic failure to cooperate w[ith] medical providers in care of this [and] other children. (2) Needs a co-parent but refuses father's involvement. Prevented access. (3) Failure to adequately supervise older child, demonstrates need for active assistance so this is not repeated w[ith] Diamond. (4) Refused [guardian ad litem] access [to the child].

[¶ 3] Based on its jeopardy findings, the court ordered that Adrian be placed in DHS custody, and that Diamond remain in her mother's custody subject to weekly visitation rights allocated to Diamond's father and DHS's supervision. The court also ordered specified evaluations as a precursor to developing a rehabilitation and reunification plan. This appeal followed.

## II. DISCUSSION

■ [¶ 4] The mother asserts that the court erred because its jeopardy findings were not supported by the evidence. We review the factual findings in a jeopardy order for clear error. *In re Thomas B.*, 1998 ME 236, ¶ 2, 719 A.2d 529, 530. A final protection order may issue if the court finds, by a preponderance of the evidence, that "the child is in circumstances of jeopardy to the child's health or welfare." 22 M.R.S.A. § 4035(2) (2004).[3]

■ [¶ 5] Contrary to the mother's assertions, the trial record paints a picture of Adrian as a young child who has been chronically neglected. Dr. Thomas Walters, a family practice physician, testified that Adrian is "morbidly obese" and at risk "of developing further health problems down the road." Based on this diagnosis, a physician had previously referred Adrian to a specialist, with whom the mother failed to schedule an appointment or otherwise follow up.

[¶ 6] In addition to obesity, Adrian suffers from hearing loss, a condition that was first identified by an auditory screening performed at Adrian's elementary school. This was not a transient problem; Adrian failed "several" auditory screening tests. The mother subsequently brought Adrian to see a doctor when he was suffering from an ear infection, and the doctor noted that

---

3. The statute defines "jeopardy" as

> serious abuse or neglect, as evidenced by:
> A. Serious harm or threat of serious harm;
> B. Deprivation of adequate food, clothing, shelter, supervision or care, including health care when that deprivation causes a threat of serious harm;
> C. Abandonment of the child or absence of any person responsible for the child, which creates a threat of serious harm; or
> D. The end of voluntary placement, when the imminent return of the child to his custodian causes a threat of serious harm.

22 M.R.S.A. § 4002(6) (2004). All the conditions of jeopardy are predicated on the threat of "serious harm," which the statute goes on to define as:

> A. Serious injury;
> B. Serious mental or emotional injury or impairment which now or in the future is likely to be evidenced by serious mental, behavioral or personality disorder, including severe anxiety, depression or withdrawal, untoward aggressive behavior, seriously delayed development or similar serious dysfunctional behavior; or
> C. Sexual abuse or exploitation.

22 M.R.S.A. § 4002(10) (2004).

Adrian failed to respond to questions the doctor asked because of his deficient hearing. Adrian was referred for follow-up care, and his mother failed to keep any of the subsequent medical appointments that were scheduled to address his hearing loss. At least four important follow-up appointments were missed.

[¶ 7] Dr. Walters testified that although the mother had brought Adrian to see a doctor when there was an "urgent medical concern," she had failed to bring Adrian to appointments to "follow-up on important medical issues for this child, things that could affect his hearing over a long period of time, his ability to perform well in school, and his long-term medical health care."

[¶ 8] Adrian was also discovered to have had sexual contact with a four-year-old child. Adrian admitted to the incident, but blamed it on the four-year-old. Upon the request of a police officer and a DHS child protective caseworker, the mother agreed to bring Adrian to a counselor following the sexual contact incident. Once again, the mother failed to follow up. In addition, Adrian had engaged in inappropriate conduct at school by looking at other children in bathroom stalls.

[¶ 9] The principal of Adrian's elementary school testified that Adrian was habitually tardy in getting to school and had missed "a good chunk of [the] morning language arts block." A plan was developed to address the issue with the mother's cooperation. By the time of the jeopardy hearing, Adrian's chronic tardiness had resumed.[4] Adrian's school principal also testified that Adrian was "likely failing or close to failing a lot of his subjects." One can fairly infer that Adrian is at great risk for academic failure.

[¶ 10] Shortly after the filing of the jeopardy petition, Adrian was struck by a speeding truck while playing with another child on a busy street after dark. He was not seriously injured. A DHS caseworker testified that she then attempted to assist the mother in developing a safety plan whereby the mother would walk Adrian to the other child's house, and the child's parents would walk Adrian back home if it was after dark. According to the caseworker, the mother did not feel that a safety plan was necessary "because she did not feel that this was anything to do with Adrian [because] it was ... entirely the driver's fault."

[¶ 11] Jeopardy may consist of "serious abuse or neglect, as evidenced by ... threat of serious harm" and the "[d]eprivation of adequate ... supervision or care, including health care when that deprivation causes a threat of serious harm." 22 M.R.S.A. § 4002(6)(A), (B). The record establishes that the court did not commit clear error in its findings regarding the mother's chronic neglect of Adrian's health care needs and her failure to supervise him properly. The guardian ad litem's closing statement to the court elucidates the risk to Adrian if his mother continues to neglect his needs:

> The concern that I have about Adrian is that he's only nine years old. He's almost ten. He is on a really, really bad path physically, emotionally, academically. He's way too young to be having the constellation of problems that he's having. I think he's having these problems because nobody's paying attention to what's going on with him. The problem with just a services order, I think, is that there have been services in place

---

4. A DHS child and family assessment caseworker testified that the mother stated that she gets Adrian off to school every day on time, and that it is not her problem if he does not get to school on time.

before, ... and it apparently hasn't taken, and it apparently hasn't worked. My concern about Adrian is that, given the way that he is going now, if something isn't done to turn him around now, he's gonna be real hard to turn around when he gets to be twelve or thirteen. And I think, at that point, we've almost lost him, and then he's really hard to turn around. I think something has to be done now, and I think the only way that it's going to happen is if he's not there. There's been time for her to arrange these services and to be attentive to these issues. She hasn't done it, and I don't think there's any reason to think that she's going to any time soon.

▬▬ [¶ 12] With regard to Diamond, the trial judge had the opportunity to observe the mother in court, and did not err in concluding that the mother's neglect of Adrian also established a risk of serious harm to Diamond. A court may rely on a parent's behavior with respect to one child in assessing whether another child in the parent's care also faces jeopardy. *See In re Danielle S.,* 2004 ME 19, ¶ 4, 844 A.2d 1148, 1149–50; *In re David W., Jr.,* 568 A.2d 513, 515 (Me.1990). In addition, a custodial parent's unreasonable refusal to permit a child to have contact with the other parent and with the court-appointed guardian ad litem should be considered by a court when determining whether the custodial parent is able to care for the child properly and to protect the child from jeopardy. Accordingly, the court properly considered Adrian's circumstances as well as the mother's refusal to permit contact between Diamond and her father, and between Diamond and the guardian ad litem,

in determining whether Diamond was in jeopardy.

[¶ 13] The mother's challenge to the trial court's findings relies heavily on her own testimony and her own view of the import of other witnesses' testimony. In this vein, she argues that (1) Adrian's obesity is not serious because she was obese as a child and Adrian is tall for his age;[5] (2) she failed to follow up regarding Adrian's obesity because she "never received the proper referral"; (3) even if Adrian is experiencing hearing loss there was "no testimony that any hearing loss affected Adrian in any way"; (4) she responded appropriately to the concerns voiced by school officials; (5) the sexual contact incident was not Adrian's fault because Adrian "was encouraged by the four-year-old to touch his genitals and to allow the four-year-old to touch Adrian's genitals"; and (6) the truck accident was the responsibility of the truck's driver.

▬▬ [¶ 14] The court acted well within the bounds of its fact-finding role in rejecting the mother's explanation of the relevant events. Although the mother offers an assessment of the evidence that is dramatically different from the trial court's, it is the trial court that is charged with weighing the evidence and making sense of the maelstrom presented by a body of conflicting testimony that is less than precise. This is why we "review the trial court's findings of fact for clear error and will uphold the findings 'unless there is no evidence to support them,'" *Hartwell v. Stanley,* 2002 ME 29, ¶ 10, 790 A.2d 607, 611 (quoting *Charlton v. Town of Oxford,* 2001 ME 104, ¶ 28, 774 A.2d 366, 375), and interpret the factual findings "in the light most favorable to the trial court's judg-

---

**5.** The mother testified that Adrian is five feet tall. The guardian ad litem testified that Adrian is a tall boy, but that he did not think that Adrian was five feet tall. The court did

not make a finding regarding Adrian's height, nor was there a request for findings following the issuance of the court's judgments.

ment," Alexander, *Maine Appellate Practice* § 405(c) at 179 (2004).

[¶ 15] The District Court's findings were supported by a preponderance of the evidence and, accordingly, its judgments must be affirmed.

The entry is:

Judgments affirmed.

DANA, J., files a dissenting opinion in which ALEXANDER and CALKINS, JJ., join.

DANA, J., with whom ALEXANDER and CALKINS, JJ., join, dissenting.

[¶ 16] I respectfully dissent. The record certainly reveals instances of parental carelessness. Parenting is difficult. Few parent perfectly. But one or a few bad parenting decisions do not equate to the constitutionally-mandated standard for a jeopardy finding necessary for the State to invade the family and separate a ten-year-old child from his mother.

[¶ 17] As we recently held, "the parental interest in maintaining the parent-child relationship is one of the most fundamental liberty interests protected by our constitution." *In re Jazmine L.*, 2004 ME 125, ¶ 12 861 A.2d 1277, 1280, 2004 WL 2192317, *3. *See also In re Alana S.*, 2002 ME 126, ¶ 16, 802 A.2d 976, 980; *In re Scott S.*, 2001 ME 114, ¶ 20 n. 12, 775 A.2d 1144, 1151; *Rideout v. Riendeau*, 2000 ME 198, ¶ 12, 761 A.2d 291, 297. This fundamental liberty interest of parents in maintaining the parent-child relationship and protecting the integrity of the family was most recently recognized by the United States Supreme Court in *Troxel v. Granville*, 530 U.S. 57, 65–66, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000).

[¶ 18] Respecting society's interest in protecting the integrity of the family and the fundamental liberty interest involved, the statutory standard for a jeopardy finding necessary to justify State invasion of the family and separation of children from parents is very high indeed. The protection order here may issue only if the court finds, by a preponderance of the evidence, that "the child is in circumstances of jeopardy to the child's health or welfare." 22 M.R.S.A. § 4035(2) (2004). In the statute, "jeopardy" means:

serious abuse or neglect, as evidenced by:

A. Serious harm or threat of serious harm;

B. Deprivation of adequate food, clothing, shelter, supervision or care, including health care when that deprivation causes a threat of serious harm;

C. Abandonment of the child or absence of any person responsible for the child, which creates a threat of serious harm; or

D. The end of voluntary placement, when the imminent return of the child to his custodian causes a threat of serious harm.

22 M.R.S.A. § 4002(6) (2004).

[¶ 19] The jeopardy definition is the basic guide for determining parental unfitness to trigger a final protection order. Notably for a jeopardy determination, harm to a child, or abuse or neglect must be "serious." "Serious harm" is then defined in section 4002(10) as:

A. Serious injury;

B. Serious mental or emotional injury or impairment which now or in the future is likely to be evidenced by serious mental, behavioral or personality disorder, including severe anxiety, depression or withdrawal, untoward aggressive behavior, seriously delayed development or similar serious dysfunctional behavior; or

### C. Sexual abuse or exploitation.

22 M.R.S.A. § 4002(10) (2004).

[¶ 20] The jeopardy and serious harm definitions may be fairly read to indicate that parental unfitness sufficiently dangerous to the child to justify a jeopardy finding may only occur when the trial court finds evidence demonstrating physical or sexual abuse, abandonment, repeated exposure of a child to danger, gross and long-term emotional or physical neglect, or some other serious threat to the safety of a child resulting from the parent's acts or omissions. The Court's opinion equates bad parenting with jeopardy and in doing so lowers the very high standard that the constitution requires be met to justify the invasion of family integrity.

[¶ 21] Inferior parenting may properly be subject to reproach and, hopefully, may generate assistance to the parent to reduce parenting problems, but a jeopardy finding is justified only if far more serious problems are identified. Because the record in this case does not reveal a threat of serious harm sufficient for a determination of jeopardy, I would vacate the judgments.

[¶ 22] With regard to Adrian, the court based its judgment on the following factual findings:

(1) Chronic failure to follow up on medical issues. (2) Failure to address serious behavioral problems or to try to assess cause. (3) Inadequate supervision to and after school. (4) Puts too much responsibility on Adrian and doesn't respond when he fails to achieve goals (school attendance/performance/loose awareness of after school).

[¶ 23] Let us examine the record to see if these findings can support the serious harm/jeopardy determination.

[¶ 24] The court first found that the mother's "chronic failure to follow up on medical issues" presented a threat of serious harm to Adrian, nine, and his one-year-old sister, Diamond. Dr. Thomas Walters testified regarding the children's history at a family practice center in Bangor. Dr. Walters testified that he had never seen any of the children personally, and said they only came to his attention after DHS contacted him with concerns about the mother's problems getting the children to follow-up appointments. The only health problems Dr. Walters described were that Adrian is obese and that he failed a hearing screening at school, possibly because he was suffering from an ear infection. Although the doctor said that the children had missed several follow-up appointments, he did not describe any serious threats to their well being, and testified that the mother brings the children in when there is an "urgent medical concern." The record does not reveal any further evidence that the children suffered a "[d]eprivation of ... health care ... caus[ing] a threat of serious harm." 22 M.R.S.A. § 4002(6)(B).

[¶ 25] The court also found that Adrian's mother had failed to "address serious behavioral problems or ... try to assess [the] cause." Elementary school principal Paul Butler and DHS caseworker Dawn Arbo testified about Adrian's behavioral issues. Butler said that early in the year Adrian was "habitually tardy" to school, but testified that the situation improved after the mother cooperated with him in developing a disciplinary plan.[6] Butler

6. Butler testified that the school classified Adrian as a "walker" because he lived so close to the school. Adrian had to walk across a playground on his way in, and it later became apparent that he was late because he was stopping to play with other children there. Adrian's tardiness improved after the principal began holding him after school when he arrived late in the morning.

also said that Adrian repeatedly engaged in "horseplay" in the bathroom—sometimes peering over the stalls at other students—and was therefore put on a "bathroom plan" whereby his bathroom use was supervised. Butler also recounted some inappropriate behavior on the playground, and testified that Adrian had once forged his mother's signature on a report card, though he did not report this incident to the mother. Finally, Butler testified that Adrian's mother had been agreeable and had appropriately addressed the issues he brought to her attention.

[¶ 26] Regarding the incident of sexual conduct between Adrian and the four-year-old boy, Arbo testified that Adrian and his brother Benjamin said the four-year-old asked them to touch his penis, and no evidence in the record suggests that the brothers initiated the behavior. Nonetheless, Arbo was concerned that Adrian's mother did not take the incident seriously enough and failed to get the boys into counseling.

[¶ 27] Neither Butler nor Arbo's testimony suggests that Adrian's behavioral problems are evidence of sexual abuse or a threat of serious harm. In fact, the record indicates that the mother responded adequately to his problems at school.

[¶ 28] The court further found that Adrian was "[i]nadequately supervis[ed] . . . after school." The only evidence in the record regarding Adrian's after school supervision is testimony about an accident in which Adrian was struck by a vehicle on a street near his home. The evidence also established, however, that Adrian was at a friend's house under the supervision of another adult, that Adrian called his mother that afternoon to let her know that he had arrived at the friend's house, and that the vehicle that struck Adrian was speeding. While unfortunate, an accident under these circumstances is not persuasive evidence of Adrian's mother's failure to supervise him.

[¶ 29] Finally, the court found that Adrian's mother puts "too much responsibility" on him and "doesn't respond when he fails to achieve goals." In its oral findings, the court expressed concern that Adrian's mother had not accompanied him to school when she found out he was showing up late. Adrian's mother testified, however, that her need to care for her younger children made it difficult for her to walk Adrian to school, and principal Butler testified that Adrian's tardiness had improved after his mother cooperated in developing a disciplinary plan. The court was also concerned about Adrian's academic performance. Though Butler testified that he thought Adrian was doing poorly in school, the court excluded the only direct evidence of his grades. Butler also testified that Adrian's mother had cooperated with him and responded appropriately to his requests. The evidence in the record does not demonstrate that the mother's failure to walk Adrian to school or respond to his academic troubles constituted a threat of serious harm.

[¶ 30] The court based its factual findings regarding Diamond largely on the evidence presented about Adrian. Diamond's father did testify that he wanted to share custody, and the court found that the child would benefit from the cooperation of two parents. The court also heard testimony that the mother had refused services and had denied the guardian ad litem access to Diamond after she learned that DHS was exploring the possibility of reuniting the child with the father. The mother, however, testified that she was willing to cooperate with DHS services if the court ordered her to do so. The court itself recognized that problems of parental cooperation and visitation take place "in a lot of cases where DHS doesn't pull jeop-

ardy." The mother's decision to temporarily refuse services and parental access did not present a threat of serious harm to the child sufficient to support a finding of jeopardy.

[¶ 31] All of this demonstrates parent conduct sufficient to justify reproach, but insufficient to demonstrate the danger or serious harm necessary to support a jeopardy finding. In my opinion, the evidence relied upon by the District Court was insufficient to support the finding of serious harm that is necessary to justify the removal of children from the parent's care. I would vacate the District Court's judgments.