against which the Board will assess Balian's conduct.

■ [¶ 16] We agree, however, that where an act is blatantly illegal or improper, or where the licensee admits to a violation, the Board need not introduce record evidence to establish the necessary standard. *Cf. Jim Mitchell & Jed Davis, P.A. v. Jackson,* 627 A.2d 1014, 1017 (Me.1993) (expert testimony to establish standard of care for attorney unnecessary where breach of duty is "so obvious that it may be determined by the Court as a matter of law, or is within the ordinary knowledge and experience of laymen."); *Cyr v. Giesen,* 150 Me. 248, 252, 108 A.2d 316, 318 (1954) (expert testimony to establish standard of care for physician unnecessary "where the negligence and harmful results are sufficiently obvious as to lie within common knowledge."). In this case, however, neither situation exists, and the Board must set forth the standard in evidence.

The entry is:

Judgment vacated. Remanded to the Administrative Court with instructions to remand to the Board of Licensure in Medicine for further proceedings consistent with this opinion.

WATHEN, C.J., dissenting.

[¶ 17] I must respectfully dissent. Medical information belongs to the patient, not the consulting physician. After receiving two written requests from his patient, Dr. Balian's abject failure to explain his particular requirements for releasing copies of the patient's records was blatantly improper. The patient and the referring health care providers were left without any means for understanding the true reasons for Dr. Balian's failure to supply copies of routine medical records. That Dr. Balian's actions, ignoring his patient's request and subsequent inquiry without explaining his requirements, constituted a breach of his duty to his patient is surely a matter within common knowledge. Therefore the Board was not required to introduce expert testimony of the appropriate standard of care. *See Searles v. Trustees of St. Joseph's College,* 695 A.2d

1206, 1210 (Me.1997) (citing *Cyr v. Giesen,* 150 Me. 248, 252, 108 A.2d 316, 318 (1954)). I would affirm the judgment.

1999 ME 10

Richard BOURGEOIS

v.

**GREAT NORTHERN NEKOOSA CORPORATION and Colwell Construction Company, Inc.**

Supreme Judicial Court of Maine.

Argued Dec. 2, 1998.
Decided Jan. 13, 1999.

Paul F. Macri (orally), William D. Robitzek, Berman & Simmons, P.A., Lewiston, for plaintiff.

Elizabeth A. Olivier (orally), Bruce C. Gerrity, Preti, Flaherty, Beliveau & Pachios, LLC, for Colwell Construction Co.

Terry A. Fralich (orally), Peter J. DeTroy, Norman, Hanson & DeTroy, LLC, Portland, for Great Northern Nekoosa Corp.

Before WATHEN, C.J. and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

ALEXANDER, J.

[¶ 1] Plaintiff Richard Bourgeois appeals from a summary judgment entered in the Superior Court (Kennebec County, *Marden, J.*) in favor of defendants, Great Northern Nekoosa Corporation (Great Northern) and Colwell Construction Company (Colwell). Bourgeois brought an action for negligent infliction of emotional distress, and the court ruled that the defendants had no legal duty to protect him. Bourgeois asks us to overturn our decision in *Michaud v. Great Northern Nekoosa Corp.*, 1998 ME 213, 715 A.2d 955, and find that the defendants owed him a duty of care as a rescuer. Alternatively, Bourgeois attempts to distinguish this case from *Michaud* on the grounds that the defendants owed him a duty of care as an invitee on the property. We affirm the judgment.

[¶ 2] This litigation arises out of the same incident that gave rise to *Michaud,* thus, except for the following, the facts of the two cases are identical. *Michaud,* 1998 ME 213, ¶¶ 2–13, 715 A.2d at 957–58. Michaud was the rescuer who dove to rescue the divers trapped in holes cut into the Ripogenus Dam. Bourgeois supervised the attempted rescue from the surface. He ordered Michaud to dive and assess the situation. When Michaud reported on the condition of the trapped divers, Bourgeois instructed him on steps to take to attempt rescue or recovery.

[¶ 3] Bourgeois filed the present complaint for negligent infliction of emotional distress, alleging that Great Northern and Colwell each owed him a duty of care to protect him from psychic injury. He claimed no physical injury. Both defendants filed motions for summary judgment. In granting the motions, the court concluded as a matter of law that Bourgeois was not within the protected class of indirect victims, and the defendants did not owe Bourgeois an independent duty of care as a rescuer or as an invitee. Bourgeois now appeals from that decision.

Discussion

[¶ 4] Bourgeois urges us to overturn our decision in *Michaud v. Great Northern Nekoosa Corp.*, 1998 ME 213, 715 A.2d 955, and recognize the "rescue doctrine" pursuant to which a rescuer may recover for negligent infliction of emotional distress. As discussed above, the litigation in *Michaud* arose out of the same incident as this case. Like Bourgeois, Michaud sued Great Northern and Colwell for negligent infliction of emotional distress, arguing that they owed him, as a rescuer, a duty of care to protect him from psychic injury. We affirmed summary judgment for the defendants, ruling:

> We have never adopted the rescue doctrine .... Were we to adopt it, this would not end any analysis in the present case. Even if the rescue doctrine gives rise to an independent duty of care owed to the rescuer and emotional distress is a foreseeable result of the defendants' negligence, "policy considerations may dictate a cause of action should not be sanctioned no matter how foreseeable the risk." *Cameron v. Pepin,* 610 A.2d 279, 282 (Me.1992). In claims for the negligent infliction of emotional distress, we must avoid inappropriately shifting the risk of loss and assigning liability disproportionate to culpability. We do not minimize the heroic and selfless acts of a rescuer, but such a person is not

a "direct victim" pursuant to Maine law. To create a special exception for a rescuer in the context of a claim for emotional distress would expand liability out of proportion with culpability. *See Cameron v. Pepin*, 610 A.2d 279, 282 (Me.1992).

*Michaud*, 1998 ME 213, ¶ 20, 715 A.2d at 960.

[¶ 5] *Stare decisis* embodies the important social policy of continuity in the law by providing for consistency and uniformity of decisions. *See Shaw v. Jendzejec*, 1998 ME 208, ¶¶ 8–9, 717 A.2d 367, 370; *Adams v. Buffalo Forge Co.*, 443 A.2d 932, 935 (Me.1982). Pursuant to that doctrine,

> a deliberate or solemn decision of a court, after argument on a question of law fairly arising in the case, the disposition of which is necessary to the determination of the case, is an authority or binding precedent in the same court and in other courts of equal or lower rank, in subsequent cases where the very point is again in controversy.

*Myrick v. James*, 444 A.2d 987, 997–98 (Me. 1982). We do not disturb a settled point of law unless "the prevailing precedent lacks vitality and the capacity to serve the interests of justice...." *Id.* at 1000.

[¶ 6] Although Bourgeois disagrees with our conclusion in *Michaud*, that decision was the product of deliberate and solemn analysis. In deciding whether to recognize the rescue doctrine in a case involving purely psychic injuries, we carefully considered valid precedent and weighed the competing policy issues raised by the parties. *See Michaud*, 1998 ME 213, ¶¶ 15–20, 715 A.2d at 958–60. Bourgeois does not present anything new indicating that *Michaud* should be overruled.

[¶ 7] Bourgeois also attempts to distinguish this case from *Michaud*. He argues that Great Northern and Colwell had a duty to protect him from psychic injury because he was an invitee. According to Bourgeois, the chaos he found upon arriving at the accident scene and the horrifying nature of the accident created a dangerous condition which constituted a breach of the duty to keep the land in safe condition.

[¶ 8] This case cannot be distinguished from *Michaud*. Bourgeois's status as an invitee is inseparable from his status as a rescuer. Consequently, he, like Michaud, does not qualify as a direct victim of the alleged negligence. *Michaud*, 1998 ME 213, ¶ 17, 715 A.2d at 959. In *Michaud*, we stated that "[the] defendants' alleged negligence was directed at the two divers trapped in the maintenance gate. Michaud was not the object of this alleged negligent conduct." *Michaud*, 1998 ME 213, ¶ 17, 715 A.2d at 959 (citations omitted). This reasoning also applies to Bourgeois.

The entry is

Judgment affirmed.