2000 ME 52

**STATE of Maine**

v.

**Mark THIBODEAU.**

Supreme Judicial Court of Maine.

Submitted on Briefs Jan. 28, 2000.
Decided March 23, 2000.

Neal T. Adams, District Attorney, John M. Pluto, Dep. Dist. Atty., Caribou, for State.

Jefferson T. Ashby, Hardings Law Offices, Presque Isle, for defendant.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

DANA, J.

[¶ 1] Mark Thibodeau appeals from the judgment entered in the Superior Court (Aroostook County, *Pierson, J.*) following his conditional plea and conviction for trafficking in marijuana (Class C) in violation of 17–A M.R.S.A. § 1103.[1] On

---

1. Section 1103 provides in pertinent part:
   1. A person is guilty of unlawful trafficking in a scheduled drug if the person intentionally or knowingly traffics in what the person knows or believes to be a scheduled drug and that is in fact a scheduled drug
   . . . .

2. Violation of this section is:
   . . . .
   B. A Class C crime if the drug is a schedule X drug, if it is marijuana in a quantity of more than one pound or if it is marijuana and the person grows or cultivates 100 or more plants

appeal, Thibodeau contends that the court erred by denying his motion to suppress because a Maine Drug Enforcement Agency (MDEA) agent obtained the evidence he sought to suppress as a result of an improper entry to his apartment. He also contends that he was subjected to a custodial interrogation without the benefit of a *Miranda*[2] warning. We affirm.

[¶ 2] The MDEA, having made its decision to seek a warrant to search Thibodeau's apartment, sent agent Thomas Pelletier to determine how to describe in the warrant the door to the Thibodeau apartment. After knocking on the door that entered into Apartment C and obtaining no answer, Agent Pelletier turned the doorknob and discovered it was unlocked. He opened the door and, although he did not enter, he briefly looked in the apartment and learned that it did in fact contain marijuana plants. Agent Pelletier then closed the door and left the building. When he reported the information regarding Apartment C's location to Agent Crandall, Agent Pelletier informed him that he had viewed the marijuana plants.

[¶ 3] The improper viewing of the apartment, however, was but one misstep in an investigation that had otherwise been thorough and well planned. The record indicates that, prior to Agent Pelletier's action, the MDEA had (1) obtained information from an informant that Thibodeau was growing marijuana in one of the apartments within a building containing three units, (2) gathered and analyzed the utility records of the three units, and (3) engaged in legal surveillance of the apartment building including an infra-red recording of the building indicating that an inordi-

nate amount of heat was being emitted from the apartment under suspicion. All of the information obtained by the MDEA during the investigation supported the agency's belief that Thibodeau was growing marijuana in Apartment C.

[¶ 4] When MDEA agent David Socoby subsequently submitted an affidavit and request for a search warrant describing the evidence supporting the warrant, he attached an addendum explaining in detail Agent Pelletier's actions so that the Justice of the Peace was both aware of those actions and in a position to assess whether the search warrant should be denied as a result.

[¶ 5] "The standard of review of an appeal from a denial of a motion to suppress is that the decision will be upheld if any reasonable view of the evidence supports the trial court's decision," *United States v. Ford*, 22 F.3d 374, 378 (1st Cir. 1994) (quoting *United States v. McLaughlin*, 957 F.2d 12, 16 (1st Cir.1992)), and questions of law that arise in the course of the analysis are reviewed de novo, *see id.*

[¶ 6] The exclusionary rule prohibits introduction of tangible materials seized during an unlawful search, as well as any derivative evidence that is acquired as a result of the unlawful search. *Murray v. United States*, 487 U.S. 533, 537, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988). The "independent source" doctrine, however, permits the introduction of evidence initially discovered during, or as a consequence of, an unlawful search, but later obtained through independent legal activities that are untainted by the initial illegal activity.

. . . .

**3.** A person is presumed to be unlawfully trafficking in scheduled drugs if the person intentionally or knowingly possesses any scheduled drug that is, in fact:

    **A.** More than one pound of marijuana

. . . .

17-A M.R.S.A. 1103 (1983 & Supp.1997).

**2.** The purpose of a *Miranda* warning is to safeguard an uncounseled criminal defendant's Fifth Amendment privilege against self-

incrimination. To protect this right a law enforcement officer may not commence a custodial interrogation before warning a suspect "that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

*See Murray,* 487 U.S. at 537, 108 S.Ct. 2529; *see also Silverthorne Lumber Co. v. United States,* 251 U.S. 385, 392, 40 S.Ct. 182, 64 L.Ed. 319 (1920). In the present case, Thibodeau argues that the MDEA's decision to seek the warrant was prompted by what Agent Pelletier saw when he opened the door to the apartment, and was therefore not independent of Agent Pelletier's actions. The record does not support this assertion.

[¶ 7] The affidavit and request for a search warrant contained sufficient information from which the Justice of the Peace could have concluded that the MDEA made its decision to seek the search warrant before, and independent of, the improper entry. The affidavit recited a detailed description of an ongoing investigation of the 16 Lafayette Street building, particularly Apartment C. The information gathered during that investigation, prior to the improper entry, clearly provided the MDEA with probable cause to seek the warrant.

[¶ 8] The record does not disclose that the MDEA attempted to use the information obtained from its improper actions to its advantage.[3] In fact, we commend the MDEA on its full disclosure.

[¶ 9] Because no one saw Agent Pelletier open the door to Apartment C, it would have been easy for the MDEA to not disclose the incident. While we do not condone the action itself, we find that the MDEA acted in a manner consistent with fair play. To suppress the evidence found as a result of an otherwise proper investigation would place the MDEA in a "worse position than [it] would be in absent any error or violation." *Murray,* 487 U.S. at

537, 108 S.Ct. 2529 (quoting *Nix,* 467 U.S. 431 at 443, 104 S.Ct. 2501).

[¶ 10] We next consider Thibodeau's challenge of the court's factual finding that he was not in custody during a meeting with MDEA agents. Thibodeau contends that the interrogation was custodial and that all evidence obtained as a result of statements he made during the interrogation should have been suppressed.

[¶ 11] "A *Miranda* warning is required only if a defendant is: (1) 'in custody'; and (2) subject to interrogation." *State v. Michaud,* 1998 ME 251, ¶ 3, 724 A.2d 1222, 1226 (quoting *State v. Swett,* 1998 ME 76, ¶ 4, 709 A.2d 729, 730). We will not reverse a trial court's custodial determination unless the record fails to rationally support the finding. *See Swett,* 1998 ME 76, ¶ 4, 709 A.2d at 730. After learning that his apartment had been searched, Thibodeau called the MDEA and voluntarily arranged to meet with Agent Crandall to discuss the matter. The meeting lasted approximately one hour. Thibodeau was not restrained in any manner during the meeting, and he was informed that he was free to end the conversation and leave at any time. Accordingly, it was not error for the trial court to conclude that Thibodeau was not in custody.

The entry is:

Judgment affirmed.

---

3. The "independent source" doctrine was developed as a corollary to the exclusionary rule because:

> The interest of society in deterring unlawful police conduct and the public interest in having juries receive all probative evidence of a crime are properly balanced by putting the police in the same, not a worse position, than they would have been in if no police

error or misconduct had occurred.... When the challenged evidence has an independent source, exclusion of such evidence would put the police in a worse position than they would have been in absent any error or violation.

*Murray,* 487 U.S. at 537, 108 S.Ct. 2529 (quoting *Nix v. Williams,* 467 U.S. 431, 443, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984)).