2007 ME 106

**Patrick ALEXANDRE**

v.

**STATE of Maine.**

Supreme Judicial Court of Maine.

Argued: May 22, 2007.

Decided: Aug. 9, 2007.

G. Steven Rowe, Attorney General, William R. Stokes, Deputy Atty. Gen. (orally), Fernand R. Larochelle, Assistant Atty. Gen., Augusta, for the State.

David J. Van Dyke, Esq. (orally), Hornblower, Lynch, Rabasco & Van Dyke, P.A., Lewiston, for the defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, CALKINS, LEVY, and SILVER, JJ.

LEVY, J.

[¶ 1] Patrick Alexandre was convicted of manslaughter and kidnapping following a jury trial in 2003. The State appeals from a judgment of the Superior Court (Penobscot County, *Jabar, J.*) granting Alexandre post-conviction relief based on its finding that Alexandre's former lawyer was constitutionally ineffective by failing to seek a jury determination of sentencing facts in violation of *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). Alexandre cross-appeals from the court's failure to find constitutional ineffectiveness based on his former lawyer's failure to seek the dismissal of the kidnapping count as being time-barred based on the applicable statute of limitations. We vacate the judgment as to both issues.

## I. BACKGROUND

### A. Trial, Sentencing, and Direct Appeal

[¶ 2] Alexandre was indicted in November 2001 for the crimes of intentional or knowing murder, 17–A M.R.S. § 201(1)(A)

(2006), and kidnapping (Class A), 17–A M.R.S. § 301(1)(B)(1), (3) (2006), in connection with the restraint and death of Joseph Cloak. The indictment alleged that both crimes were committed "[o]n or about the fifteenth day of September, 1989." A jury trial was held in July 2003, in the Superior Court (Penobscot County, *Jabar, J.*). The jury found Alexandre not guilty of murder, but guilty of the lesser-included offense of manslaughter (Class A), 17–A M.R.S.A. § 203(3) (1983 & Supp. 1988), and guilty of kidnapping. The trial evidence established that Cloak died while either chained to a tree over a three-day period or soon thereafter after having been buried alive.

[¶ 3] A sentencing hearing was held in October 2003. Regarding the kidnapping conviction, the court found that it was "very difficult to consider other ways to commit that crime and have it more heinous than this particular one was," and set the basic period of incarceration at thirty years. The court found no mitigating circumstances and significant aggravating factors in victim impact and in Alexandre's extensive criminal history. The sentence was set at forty years, with no portion suspended.

[¶ 4] The court's analysis was the same with respect to the manslaughter conviction. The basic sentence was set at thirty years because the court could not think of "a much worse way of committing the crime of manslaughter." The court found no mitigating factors and significant aggra-

vating factors in Alexandre's prior criminal record and the impact of the crime on the victim. The maximum sentence was set at forty years, with no period suspended. The court concluded that the two sentences should run concurrently because Alexandre's crimes of kidnapping and manslaughter "run together, they are intertwined," and the crimes were "one course of conduct."

[¶ 5] Alexandre filed an appeal and an application for leave to appeal his sentence. We affirmed Alexandre's convictions in a memorandum of decision, *see State v. Alexandre*, Mem–04–154 (Nov. 22, 2004), and the Sentence Review Panel denied his application for sentence review, *State v. Alexandre*, No. SRP–03–653 (Me. Sent. Rev. Panel Dec. 10, 2003). At no point during the trial, sentencing, or appeal did Alexandre's attorney raise or argue the applicability of *Apprendi* or *Blakely*.

B. Post–Conviction Proceeding

[¶ 6] Alexandre filed a petition for post-conviction review in February 2005,[1] alleging that his former attorney had provided him with constitutionally ineffective assistance at trial, at sentencing, and on appeal because of the failure to raise *Apprendi* and *Blakely* and other issues. The petition was subsequently amended to add the claim that the kidnapping count of the indictment was time-barred and should have been dismissed, and that his former attorney was ineffective in failing to seek

---

1. The State does not argue that sentencing claims in Alexandre's post-conviction review petition must be dismissed because of the principle governing our recent decision in *Carmichael v. State*, 2007 ME 86, ¶ 1, 927 A.2d 1172, 1174 (holding that *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and *State v. Schofield*, 2005 ME 82, 895 A.2d 927, do not retroactively apply to cases on collateral re-

view). If it had, we note that *Blakely* was decided while Alexandre's case was on direct appeal, and his conviction had yet to become final. *See United States v. Johnson*, 457 U.S. 537, 542 & n. 8, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982). Alexandre's petition was filed within one year of the date of final judgment of his direct appeal. *See* 15 M.R.S. § 2128(5)(A) (2006). *Schofield* had yet to be

the dismissal of the kidnapping count on this basis.

[¶ 7] The post-conviction court held a hearing in August 2006. Regarding the sentencing issue, Alexandre introduced copies of two letters that he had sent to his former attorney while his appeal was pending in which he had urged his attorney to advocate that *Apprendi* and *Blakely* apply to his case. Alexandre's former attorney testified that he did not consider the statute of limitations as it applied to the kidnapping count when he prepared Alexandre's defense because he viewed the case principally as a murder case, and he believed that the jury would conclude that the kidnapping was committed by someone other than Alexandre.

[¶ 8] The court granted Alexandre's petition in part. Relevant to this appeal, the court concluded that Alexandre's sentences were illegal under the principles of *Apprendi* and *Blakely*, and that Alexandre's counsel was ineffective in failing to raise the issue at the time of sentencing and again on appeal. The court noted that *Apprendi* was the law of the land at the time of Alexandre's sentencing, and that *Blakely* had been decided ten months before we affirmed Alexandre's convictions. The court likened Alexandre's case to the sentence vacated in *State v. Schofield,* 2005 ME 82, 895 A.2d 927, concluding that "[h]ad *Blakely* and *Apprendi* been raised on appeal [to the Law Court], this case could very easily have established the precedent that *Schofield* stands for today."

[¶ 9] Regarding the kidnapping conviction, the court reasoned that had a motion to dismiss the kidnapping count been filed, the charge would have been dismissed as time-barred. Nevertheless, it concluded that the attorney's failure to pursue the issue was harmless because even if the kidnapping charge had been dismissed, the jury would still have found Alexandre guilty of manslaughter. Accordingly, the court concluded that Alexandre had failed to demonstrate that he was prejudiced by his former attorney's failure to seek the dismissal of the kidnapping count.[2]

[¶ 10] The court vacated Alexandre's sentences, and directed that the matter be set for resentencing and "[i]f the State recommends a sentence beyond the statutory maximum or the court wishes to impose a sentence beyond the statutory maximum, then [Alexandre] is entitled to a sentencing trial before a fact finder of his choice."

[¶ 11] The State appeals on the manslaughter sentencing issue, and Alexandre cross-appeals regarding the kidnapping conviction.

## II. LEGAL ANALYSIS

### A. Whether Alexandre's Sentences Violated His Sixth Amendment Rights

[¶ 12] The State contends that the court erred when it concluded that *Schofield* controls this case because *Schofield* interpreted a later version of 17–A M.R.S. § 1252(2)(A) that explicitly contained two

---

decided at the time Alexandre filed his petition.

2. Alexandre raised as additional issues at the post-conviction review hearing that his counsel was ineffective in failing to: (1) secure the testimony of a Charles Tuttle at trial, who would have testified that another man committed the homicide; (2) obtain Alexandre's polygraph test results, an excavation video, pieces of duct tape or gag found on the vic-

tim, or hire an expert to testify about whether the victim died of asphyxiation or blunt trauma; (3) argue that the manslaughter statute of limitations had run; and (4) object to the court's manslaughter instruction to the jury. The post-conviction review justice concluded there was no merit in any of these claims. To the extent the court's determination is challenged in the pro se supplemental memorandum filed by Alexandre in this appeal, we also find no merit in any of these claims.

discrete sentencing ranges for Class A crimes. The crux of the State's argument is that the version of section 1252(2)(A) in effect at the time Alexandre committed his crimes in 1989, 17–A M.R.S.A. § 1252(2)(A) (Supp.1988), sets a single statutory maximum sentence of forty years. The State argues that *State v. Lewis*, 590 A.2d 149 (Me.1991), the principal case interpreting the version of section 1252(2)(A) in effect at the time Alexandre's crimes were committed,[3] stands for the proposition that there is only one statutory maximum sentence of forty years, subject to two ranges of judicial discretion within that maximum, depending on the court's discretionary finding of the heinousness of the offense.

[¶ 13] Alexandre contends that the State misreads *Lewis* and that the opinion means what it said when it identified within section 1252(2)(A) two discrete sentencing ranges for Class A crimes: a lower range of zero to twenty years, and an upper range of twenty to forty years. Alexandre asserts that the Superior Court properly concluded that his sentences are illegal and that he received ineffective assistance of counsel, because of the principle, stated in *Schofield*, that it is error to impose a sentence in excess of twenty years based solely on the court's finding of the heinousness of the crime if the defendant has not waived the right to have a jury determine the issue.

[¶ 14] We review questions of law de novo, *State v. Thibodeau*, 2000 ME 52, ¶ 5, 747 A.2d 596, 598, including the legality of a sentence, *State v. Soucy*, 2006 ME 8, ¶ 11, 890 A.2d 719, 723, and the interpretation of a statute, *State v. Thongsavanh*,

2007 ME 20, ¶ 27, 915 A.2d 421, 427. As the framework for our analysis, we address: (1) our decision in *Schofield*; (2) our decision in *Lewis*; and (3) our conclusion that Alexandre's Sixth Amendment right to trial by jury was not violated by the sentencing court's determination of the heinousness of his crimes.

### 1. *State v. Schofield*

[¶ 15] As a prelude to our consideration of the *Schofield* decision as it affects Alexandre's petition, we turn first to the United States Supreme Court's decisions in *Apprendi* and *Blakely* because they were the foundation for our *Schofield* decision. In *Apprendi*, the Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490, 120 S.Ct. 2348. The Court distinguished facts that result in "sentence enhancement" by increasing the maximum authorized statutory sentence that is "the functional equivalent of an element of a greater offense than the one covered by the jury's guilty verdict," from "sentencing factor[s]," whether "aggravating or mitigating in character, that support[ ] a specific sentence within the range authorized by the jury's finding." *Id.* at 494 n. 19, 120 S.Ct. 2348 (emphasis omitted).

[¶ 16] In *Blakely*, the Court clarified that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." 542 U.S. at

---

**3.** In *State v. Lewis*, 590 A.2d 149, 149 (Me. 1991), we cited to 17–A M.R.S.A. § 1252(2)(A) (Supp.1990), which contains the identical language as the sentencing statute at issue in Alexandre's sentence, 17–A M.R.S.A. § 1252(2)(A) (Supp.1988). Both codifications of section 1252(2)(A) include the statutory amendment of P.L.1987, ch. 808, § 1 (effective July 1, 1989).

303, 124 S.Ct. 2531 (emphasis omitted). The Court explained:

> In other words, the relevant statutory maximum is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts which the law makes essential to the punishment, and the judge exceeds his proper authority.

*Id.* at 303–04, 124 S.Ct. 2531 (quotation marks and emphasis omitted).

[¶ 17] We applied *Apprendi* and *Blakely* in *Schofield*, which involved a defendant who was convicted of manslaughter and sentenced to a term of twenty-eight years, with all but twenty years suspended, under 17–A M.R.S.A. § 1252(2)(A) (Supp.2001), as it had been previously amended in 1995. *Schofield*, 2005 ME 82, ¶ 2, 895 A.2d at 928–29. The 1995 amendment added the second sentence to the statute (shown in italics):

> In the case of a Class A crime, the court shall set a definite period not to exceed 40 years. *The court may consider a serious criminal history of the defendant and impose a maximum period of incarceration in excess of 20 years based on either the nature and seriousness of the crime alone or on the nature and seriousness of the crime coupled with the serious criminal history of the defendant.*

P.L.1995, ch. 473, § 1 (effective Sept. 29, 1995).

[¶ 18] We recognized in *Schofield* that the 1995 amendment was intended to codify our decision in *Lewis*, in which we concluded that section 1252(2)(A)'s authorization of a sentence for "a definite period not to exceed 40 years" actually meant that there were "two tiers of sentences for Class A offenses: up to twenty years for most offenses, and between twenty and forty years for 'the most heinous and violent crimes committed against a person.' " *Schofield*, 2005 ME 82, ¶¶ 13–15, 895 A.2d at 931–32 (quoting *Lewis*, 590 A.2d at 151). The 1995 amendment codified the two tiers recognized in *Lewis* so that "a sentence in excess of twenty years may not be imposed" without a judicial finding of heinousness. *Schofield*, 2005 ME 82, ¶ 14, 895 A.2d at 931. Applying *Apprendi* and *Blakely* to the upper tier sentence imposed against the defendant in *Schofield*, we concluded that section 1252(2)(A), as amended in 1995, "cannot be constitutionally applied without affording the defendant an opportunity to have the fact-finder of her choice, judge or jury, determine whether, beyond a reasonable doubt, the crime was among the most heinous offenses committed against a person." *Id.* ¶ 21, 895 A.2d at 933.

[¶ 19] The 1995 revision of section 1252(2)(A) "referenced the two-tier approach of *Lewis*, although it added an additional ground upon which a court may base a sentence exceeding twenty years: the serious criminal history of the defendant." *Id.* ¶ 15, 895 A.2d at 931–32 (quotation marks omitted). We observed in *Schofield* that because the 1995 amendment to section 1252(2)(A) had transported the approach of *Lewis* into the statute, and because Schofield was sentenced for a crime that was subject to the 1995 amendment, we were foreclosed from revisiting *Lewis's* interpretation of the previous version of section 1252(2)(A). *Id.*

## 2. *State v. Lewis*

[¶ 20] *Lewis* involved a defendant who was convicted of arson (Class A), 17–A M.R.S.A. § 802 (1983 & Supp.1990), and sentenced to a term of twenty years imprisonment, with all but fifteen years sus-

pended pursuant to 17–A M.R.S.A. § 1252(2)(A) (Supp.1990). 590 A.2d at 149–50. Our decision reviewed the history of P.L.1987, ch. 808, § 1, which amended section 1252(2)(A) and increased the statutory maximum for Class A crimes from twenty years to forty years, concluding that that amendment was intended to create two ranges of sentences:

> [T]he intent was to make available two discrete ranges of sentences for Class A crimes. For the majority of such crimes the sentence imposed should be the same as it would have been under the twenty-year limit. Only for the most heinous and violent crimes committed against a person should the court in its discretion consider imposing a basic sentence within the expanded range of twenty to forty years.

590 A.2d at 151. We amended the defendant's sentence by reducing it from a sentence of twenty years with all but fifteen years suspended to a sentence of ten years, with all but eight years suspended. *Id.*

[¶ 21] The State urges us to revisit *Lewis* and to interpret the decision as standing for the proposition that sentencing under section 1252(2)(A), prior to its amendment in 1995, is not controlled by the principle of *Schofield.* The State would have us read *Lewis* as holding (1) that there is only one statutory maximum sentence pursuant to section 1252(2)(A) of forty years, and (2) that sentencing within the range of zero to forty years is entirely a matter of judicial discretion. We are not persuaded by the State's reading of *Lewis.*

[¶ 22] First, although the plain language of section 1252(2)(A), prior to its amendment in 1995, included nothing about two tiers of sentences, this absence does not alter the fact that *Lewis* construed the statute as imposing "two discrete ranges of sentences for Class A crimes." *Id.* Second, *Lewis* did not determine that the two ranges are a matter of pure judicial discretion, existing separately from the statute. Instead, in discussing the standard of review for sentencing cases, *Lewis* concluded that a sentencing court is "constrained by the limits of section 1252," and that a review of the "propriety of a sentence" based on such statutory limits for misapplication of principle can be accomplished "without deferring to the sentencing court." *Id.* at 150. *Lewis* treated the statute's legislative history as establishing the Legislature's "intent ... to make available two discrete ranges of sentences for Class A crimes." *Id.* at 151.

[¶ 23] One month after we decided *Lewis,* we characterized the decision as holding that *"the Legislature* created two discrete ranges of sentences for Class A crimes." *State v. Clark,* 591 A.2d 462, 464 (Me.1991) (emphasis added). As we also explained in *State v. Hewey,* the construction of the statute in *Lewis* created two statutory maximums, depending on the finding of heinousness: "[I]t is well established that there are two limits within which an offender's maximum period of incarceration may fall for the commission of a Class A offense: the 'original' limit is 20 years as the maximum period of incarceration, and the 'extended' limit is 40 years." [4] 622 A.2d 1151, 1155 (Me.1993).

---

4. Considered together, our other decisions issued after *Lewis* but prior to *Hewey* also reflect that *Lewis* was understood to have determined that it was the Legislature's intent to enact two discrete ranges of sentences. *See State v. Corbett,* 618 A.2d 222, 223 (Me.1992); *State v. Reynoso,* 604 A.2d 441, 442–43 (Me. 1992); *State v. Kehling,* 601 A.2d 620, 624 (Me.1991); *State v. Gosselin,* 600 A.2d 1108, 1110 (Me.1991); *State v. Michaud,* 590 A.2d 538, 544 (Me.1991); *see also State v. Cooper,* 617 A.2d 1011, 1016 (Me.1992). The same is true of our decisions that came after *Hewey* and that considered section 1252(2)(A) as it

[¶ 24] It is inescapable that *Lewis* construed section 1252(2)(A), as it existed prior to its amendment in 1995, as creating two statutory maximums, and that in order for a court to sentence in the upper statutory range of twenty to forty years, there must be a finding of heinousness. If we adhere to this view, it necessarily follows that a finding of heinousness as it relates to Alexandre's crimes, and the imposition of an upper-tier sentence, requires the same jury protections that we required in *Schofield,* when interpreting the later version of section 1252(2)(A) as amended in 1995.

a. The Plain Meaning and Legislative History of the Statute Considered in *State v. Lewis*

 [¶ 25] If a statute is unambiguous, we do not look beyond the plain meaning of the statute's language to its legislative history. *See Ashe v. Enterprise Rent–A–Car,* 2003 ME 147, ¶ 7, 838 A.2d 1157, 1159; *State v. Bjorkaryd–Bradbury,* 2002 ME 44, ¶ 9, 792 A.2d 1082, 1084; *State v. Edward C.,* 531 A.2d 672, 673 (Me.1987). Section 1252(2)(A) stated: "In the case of a Class A crime, the court shall set a definite period not to exceed 40 years." 17–A M.R.S.A. § 1252(2)(A) (Supp.1988). There is nothing ambiguous or uncertain about this language. Our statutory analysis in *Lewis* should have ended with the statute's plain meaning. Even if there was reason to resort to legislative history, however, that history strongly supports the plain meaning construction of the statute.

[¶ 26] The relevant legislative history begins with the original enactment of the

Maine Criminal Code in 1975. *See* P.L. 1975, ch. 499, § 1 (effective Mar. 1, 1976). At that time, the maximum sentences for felonies other than murder were twenty years for Class A crimes, ten years for Class B crimes, and five years for Class C crimes. 17–A M.R.S.A. § 1252(2)(A)-(C) (1983). When calculations under the then-applicable good time statute were factored in, *see* 17–A M.R.S.A. § 1253(3)-(5) (1983), the maximum effective sentence for a Class A crime was approximately thirteen years. *See* L.D. 2312, Statement of Fact (113th Legis.1988). The actual and effective maximum sentences for Class A crimes came to be viewed as giving judges an insufficient range of sentencing choices to address persons who committed particularly serious crimes or who indicated little real prospect for rehabilitation. *See id.*

[¶ 27] To address these concerns, L.D. 2312 was presented to the 113th Legislature in 1988. As originally drafted, L.D. 2312 proposed to amend 17–A M.R.S.A. § 1252(2) to double the maximum sentences for Class A, Class B, and Class C crimes to forty, twenty, and ten years respectively. L.D. 2312, § 2 (113th Legis.1988). The original Statement of Fact supporting L.D. 2312 discussed its intended impact as follows:

> It is anticipated that the number of offenders who are sentenced to jail will not increase. The bill is expected to affect less than 1/2 of 1% of sentenced inmates. The bill is expected to have no immediate effect upon the present prison population, which will not be appreciably affected for at least 13 years.

existed prior to its revision in 1995. *See State v. Carr,* 1998 ME 237, ¶ 5, 719 A.2d 531, 533; *State v. King,* 1998 ME 60, ¶ 13, 708 A.2d 1014, 1017–18; *State v. Jackson,* 1997 ME 174, ¶ 10, 697 A.2d 1328, 1331; *State v. Prewara,* 687 A.2d 951, 954 (Me.1996); *State v. Babbitt,* 658 A.2d 651, 653 (Me.1995); *State v.*

*Roberts,* 641 A.2d 177, 178 n. 3 (Me.1994); *State v. Bolduc,* 638 A.2d 725, 727 (Me.1994); *State v. Shackelford,* 634 A.2d 1292, 1295 (Me. 1993); *State v. Hawkins,* 633 A.2d 78, 79 (Me.1993); *see also State v. Cloutier,* 646 A.2d 358, 361 (Me.1994).

L.D. 2312, Statement of Fact (113th Legis.1988). The thirteen-year reference addressed the then-effective maximum sentence for Class A crimes, once good time was factored in.

[¶ 28] The legislation's Statement of Fact reflected that it was intended to increase "the maximum range of sentencing available for the most serious offenders," and that, once enacted, "[j]udges will retain full authority to impose any sentence presently available under Maine law." *Id.* There was no mention of two tiers of sentences within each of the sentencing ranges for Class A, Class B, and Class C crimes.

[¶ 29] The next phase of the relevant legislative history reflects that when L.D. 2312 was reviewed by the Committee of Judiciary, the Committee became concerned that doubling the maximum sentences for all three categories of felony crimes could have significant fiscal impacts. *See* Comm. Amend. A to L.D. 2312, No. H–720, Fiscal Note (113th Legis.1988). In response, Committee Amendment A was added to L.D. 2312. Comm. Amend. A to L.D. 2312, No. H–720 (113th Legis.1988). Committee Amendment A eliminated the proposed increases in sentences for Class B and Class C crimes and deferred the effective date of the increase in maximum sentences for Class A crimes until July 1989. *Id.*

[¶ 30] Committee Amendment A was supported by a Statement of Fact that explained the legislative decision to double the maximum sentence for Class A crimes. Because the Statement of Fact bears directly on whether the Legislature intended to establish two discrete sentencing ranges for Class A crimes, we quote it in its entirety:

> This amendment increases the penalty for Class A crimes from 20 years to 40 years. Class A crimes consist of rob-

bery, rape, gross sexual misconduct, arson, attempted murder, manslaughter and burglary of a dwelling when armed with a firearm. This section of the amendment is effective July 1, 1989.

> The amendment specifically recognizes that judges do not have sufficient discretion when dealing with the most heinous and violent crimes that are committed against a person. The amendment does not increase the penalties for crimes committed against property.

> At the present time, violent and brutal crimes against women and children are punished by a maximum sentence of 20 years. Because of the operation of Maine's good time law, the maximum period of actual incarceration is 13 years and 4 months. In some cases, good time may reduce the sentence by as much as 50%.

> This amendment recognizes that judges should have *an available range of sentence* that requires the court to take into consideration the extent that the good time laws impact upon the sentence imposed upon the most serious and violent criminals.

Comm. Amend. A to L.D. 2312, No. H–720, Statement of Fact (113th Legis.1988) (emphasis added).

[¶ 31] This Statement of Fact demonstrates that the purpose of the legislation, as amended, was to (1) increase judicial sentencing discretion, and (2) address the effect of Maine's good time law on maximum periods of incarceration, by (3) enacting an increased "available range of sentence" for Class A crimes. *Id.* The reference to "the most heinous and violent crimes" was directed to Class A crimes, as distinguished from Class B and Class C crimes. There was no mention of two discrete sentencing ranges for Class A crimes.

[¶ 32] In *Lewis*, we reviewed the statute's legislative history, noting, among other things, that "[t]he bill, as enacted into law, increased only the maximum sentence for Class A crimes from 20 to 40 years." 590 A.2d at 151. Nonetheless, *Lewis* concluded that the Legislature intended to "make available two discrete ranges of sentences for Class A crimes." *Id.*

[¶ 33] The legislative history of section 1252(2)(A) does not support the proposition that the statute was intended to make available not one, but two discrete ranges of sentences for Class A crimes. *See also* Amy K. Tchao, Student Author, *One Step Forward, One Step Back: Emergency Reform and Appellate Sentence Review in Maine*, 44 Me. L.Rev. 345, 389 (1992).[5] As already noted, the "most heinous and violent crimes" as referred to in the legislative history was used to distinguish all Class A crimes from Class B and C crimes.

[¶ 34] Our analysis of the statute's plain, unambiguous meaning, and the associated legislative history, leads us to conclude that *Lewis* was wrongly decided.

b. Application of the Doctrine of *Stare Decisis*

[¶ 35] "*Stare decisis* embodies the important social policy of continuity in the law by providing for consistency and uniformity of decisions." *Bourgeois v. Great N. Nekoosa Corp.*, 1999 ME 10, ¶ 5, 722 A.2d 369, 371. The fact that a prior decision is found to have been wrongly decided is, standing alone, insufficient to justify overruling the decision. We proceed with great care before overruling a prior decision, and do so only after careful analysis and based on a compelling reason. "We do not disturb a settled point of law unless the prevailing precedent lacks vitality and the capacity to serve the interests of justice." *Id.* (quotation marks omitted).[6]

---

**5.** The author explains:

Regardless of what the Legislature really intended in enacting the Class A sentence amendment, there was nothing in the statutory language of the amendment itself to indicate that only certain types of crimes were to be considered in the expanded forty-year range. Thus, the Law Court's adoption of two discrete ranges of sentences—a regular Class A and a "super" Class A range—was a somewhat strained interpretation of the language itself. Even the legislative history, which predicted that only close-to-maximum sentences would be affected, does not support an automatic two-tiered system without some creativity.

Amy K. Tchao, Student Author, *One Step Forward, One Step Back: Emergency Reform and Appellate Sentence Review in Maine*, 44 Me. L.Rev. 345, 389 (1992) (footnote omitted).

**6.** The factors that may be relevant to a determination regarding *stare decisis* were articulated in *Myrick v. James*, 444 A.2d 987, 1000 (Me.1982), as follows:

(1) [T]he court is convinced that the rule of the prior decision operates harshly, unjustly and erratically to produce, in its case-by-case application, results that are not consonant with prevailing, well-established conceptions of fundamental fairness and rationally-based justice[;]

(2) [T]hat conviction is buttressed by more than the commitment of the individual justices to their mere personal policy preferences, that is, by the substantial erosion of the concepts and authorities upon which the former rule is founded and that erosion is exemplified by disapproval of those conceptions and authorities in the better-considered recent cases and in authoritative scholarly writings[;]

(3) [T]he former rule is the creation of the court itself in the legitimate performance of its function in filling the interstices of statutory language by interpretation and construction of vague, indefinite and generic statutory terms[;]

(4) [T]he Legislature has not, subsequent to the court's articulation of the former rule, established by its own definitive and legitimate pronouncement either specific acceptance, rejection or revision of the former rule as articulated by the court[;] and

(5) [T]he court can avoid the most severe impact of an overruling decision upon reli-

[¶ 36] Our application of the doctrine of *stare decisis* in this case must account, however, for the change in sentencing practices resulting from the Sixth Amendment right only recently recognized in *Apprendi* and its progeny. One of the recognized justifications for setting aside *stare decisis* in statutory interpretation is when there is "[a]n intervening development of the law . . . that removes or weakens the conceptual underpinnings of the prior decision." 18 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 134.06[1][c] at 134–49 (3d ed.2007). Here, it is clear that *Lewis* construed section 1252(2)(A) as expanding the sentencing discretion of *judges,* and contemplated that it would be judges, not juries, who would engage in the fact-finding associated with sentencing if the court was to consider a sentence in the extended twenty-to-forty-year range. Neither the Legislature, when it increased the maximum sentence for Class A crimes to forty years, nor the Court, when it considered that increase in *Lewis,* had reason to anticipate the new paradigm governing sentencing practices sparked by the *Apprendi* decision more than a decade later.

[¶ 37] With the changes wrought by *Apprendi* and *Blakely,* a key conceptual underpinning of our decision in *Lewis* has been removed. We are convinced that continued adherence to the *Lewis* decision will produce unjust results in the face of the expanded Sixth Amendment rights recognized in *Apprendi.* Such adherence will require that the narrow cohort of criminal defendants convicted of Class A crimes committed between July 1, 1989, and September 29, 1995, who received upper range sentences and who are not barred by the passage of time from seeking post-conviction review, may become eligible for resentencing many years after they committed and were then convicted of their crimes. Alexandre's case is emblematic. He was convicted in 2003 of crimes that were committed in 1989. The human burdens that a new sentencing trial would place on the immediate family of Alexandre's victim more than eighteen years after the crime are great. *See* 17–A M.R.S. §§ 1171(2)(B)(2), 1174(1) (2006).[7] In addition, the risk that resentencing may result in unjust sentences because memories have faded or critical witnesses and evidence may no longer be available is real. We are convinced that continued adherence to *Lewis,* as applied to the discrete class of cases governed by section 1252(2)(A) from its effective date, July 1, 1989, until its revision effective September 29, 1995, would produce results that are not consonant with "fundamental fairness and rationally-based justice." *Myrick v. James,* 444 A.2d 987, 1000 (Me.1982).

[¶ 38] Additional support for overruling *Lewis* is provided by the Legislature's recent decision to replace the previously codified two discrete sentencing ranges for Class A felonies, with a single sentencing range of zero-to-thirty years. *See* P.L.

ance interests that may have come into being during the existence of the former rule by creatively shaping the temporal effect of the new rule articulated by the holding of the overruling case.
(Quotation marks omitted and footnote omitted.)

7. Pursuant to 17–A M.R.S. § 1174(1) (2006), the victim must be provided an opportunity to participate at sentencing by making an oral statement in open court or submitting a written statement to the court. Pursuant to 17–A M.R.S. § 1171(2)(B)(2) (2006), the definition of "victim" includes the immediate family of the victim of a crime if the victim is unable to participate because of "death, age, physical or mental disease, disorder or defect."

2003, ch. 657, § 10 (effective July 30, 2004) (codified at 17–A M.R.S. § 1252(2)(A) (2006)).[8] In revising section 1252(2)(A) yet again, the Legislature recognized that *Apprendi* placed the two-tier system under a constitutional cloud, and that "[t]he bill eliminates the constitutional cloud by replacing the 2–tier system with a single 0– to 30–year range." L.D. 1844, Summary of Fact (121st Legis.2004).

[¶ 39] Furthermore, we note the minimal impact of reliance interests that may have come into being under *Lewis*. *See Myrick*, 444 A.2d at 1000. "[T]here should be greater readiness to abandon a rule of doubtful adequacy in dispensing exact justice, when the rule to be discarded may not reasonably be supposed to have determined the conduct of litigants." *Beaulieu v. Beaulieu*, 265 A.2d 610, 613 (Me.1970) (citing BENJAMIN N. CARDOZO, THE NATURE OF THE JUDICIAL PROCESS 150–51 (1921)); *see also Hohn v. United States*, 524 U.S. 236, 252, 118 S.Ct.

1969, 141 L.Ed.2d 242 (1998) (treating the role of stare decisis as reduced as to a "rule of procedure that does not alter primary conduct"). *Lewis's* two-tier sentencing scheme did not create valid reliance interests in criminals that influenced the manner in which they violated Maine's most serious criminal laws. Notably, the behavior underlying Alexandre's convictions occurred years before the Court's articulation of the two-tier sentencing regime. Our abandonment of past precedent by overruling *Lewis* will not "interfere with the valid reliance interests of litigants." *Adams v. Buffalo Forge Co.*, 443 A.2d 932, 935 (Me.1982).

[¶ 40] We conclude that our decision in *Lewis* lacks vitality and the capacity to serve the interests of justice. It is, therefore, overruled. Section 1252(2)(A) (Supp. 1988) established a single sentencing range of zero-to-forty years for Class A felonies, not two discrete sentencing ranges of zero to twenty years and twenty to forty years.

---

8. The limiting effect of the Legislature's adoption of a single, indeterminate range with a maximum sentence of thirty years in response to *Schofield* has been described as follows: Although the court's holding in *Schofield* undoubtedly affected defendants whose sentences were enhanced pursuant to the two-tier system, its impact was significantly limited by the legislature's preemptive amendment to section 1252(2)(A) in 2004. At that time, the legislature revised the language of section 1252(2)(A) to read that, "[i]n the case of a Class A crime, the court shall set a definite period not to exceed 30 years." This legislation indicated in its statement of fact that it was designed to eliminate a "constitutional cloud" created by *Apprendi* by eliminating what it characterized as the two-tier system and replacing it with "a single 0–to 30–year range." Quite evidently ahead of its time, that amendment enabled the legislature to cut off the potential flood of defendants impacted by Schofield by wholly eliminating the two "zones" of sentencing and replacing it with a 0–30 year range.

Thus, were Schofield sentenced today, the sentencing court would be confined simply to the 0–30 range provided by revised section 1252(2)(A). To reach an appropriate sentence for Schofield, the court would continue to follow the three-step *Hewey* analysis. Accordingly, the court would (1) set a basic term of imprisonment; (2) consider aggravating and mitigating circumstances; and (3) determine whether any portion of the sentence should be suspended. By providing such a procedure, Maine has sought to protect the legislature's interest in reducing sentencing disparity at step one (i.e., by mandating a specific sentencing range for a particular class of crime), while simultaneously ensuring that each defendant will receive the benefit of genuine judicial discretion at step two.
Brian R. Gallini & Emily Q. Shults, *Herding Bullfrogs Towards a More Balanced Wheelbarrow: An Illustrative Recommendation for Federal Sentencing Post–Booker*, 33 J. LEGIS. 1, 27–28 (2006) (quotation marks omitted).

### 3. Alexandre's Sixth Amendment Right to Trial by Jury

[¶ 41] Having concluded that, as applied to Alexandre's case, section 1252(2)(A) establishes only a single sentencing range of zero to forty years for Class A crimes, we further conclude that his Sixth Amendment right to trial by jury was not violated. Alexandre's sentences in excess of twenty years were not dependent on "any fact that increases the penalty for a crime beyond the prescribed statutory maximum." *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348. Because 17–A M.R.S.A. § 1252(2)(A) (Supp.1988) contained only a single statutory maximum of forty years, Alexandre's Sixth Amendment right to trial by jury was not violated by the sentencing judge's conclusion that his sentence should exceed twenty years because of the degree of heinousness associated with Alexandre's crimes. Alexandre has failed to establish that his former attorney was ineffective in this regard.

### B. Whether Alexandre was Denied the Effective Assistance of Counsel Because His Counsel Failed to Seek the Dismissal of the Kidnapping Charge

[¶ 42] On cross-appeal, Alexandre argues that the post-conviction court erred in concluding that the failure of his former counsel to move to dismiss the kidnapping charge or to raise the issue on appeal was harmless error.

[¶ 43] To determine whether Alexandre received constitutionally ineffective assistance of counsel, we examine:

[F]irst, whether there has been serious incompetency, inefficiency, or inattention of counsel amounting to performance . . . below what might be expected from an ordinary fallible attorney; and second, whether any such ineffective representation likely deprived the defendant of an otherwise available substantial ground of defense.

*Aldus v. State*, 2000 ME 47, ¶ 12, 748 A.2d 463, 467 (quotation marks omitted). "[T]he federal and state guarantees are virtually identical." *McGowan v. State*, 2006 ME 16, ¶ 12, 894 A.2d 493, 497.[9] "The burden is on the defendant to prove both prongs." *Id.* In an ineffective assistance of counsel claim, we review for clear error a post-conviction court's findings and conclusions. *See id.* ¶¶ 15–16, 894 A.2d at 498 (declining invitation to adopt bifurcated standard, with issues of law reviewed de novo, because there was error in prejudice determination regardless of standard applied).

[¶ 44] The post-conviction court's finding that the kidnapping charge would have been dismissed if Alexandre's counsel had brought a motion to dismiss is supported by competent evidence in the record. Alexandre was charged with kidnapping on November 5, 2001. The indictment alleged that the kidnapping occurred on or about September 15, 1989. The statute of limitations pursuant to 17–A M.R.S. § 8(2)(A) (2006) for Class A crimes is six years. Because Alexandre admitted he was absent from the state, the statute of limitations may be extended by five years to a total of eleven years.

---

**9.** The test, as articulated by the United States Supreme Court is:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defen-

dant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

*See* 17–A M.R.S. § 8(3)(A) (2006). The indictment was returned more than twelve years after the date the alleged offense occurred. The post-conviction court found that had a motion to dismiss been brought, the kidnapping charge would have been dismissed and our review of the record establishes that this finding is not clearly erroneous. Despite this finding, the court did not grant post-conviction relief because the court concluded that Alexandre had failed to establish prejudice.

[¶ 45] At the post-conviction hearing, Alexandre's former counsel admitted that he never raised the statute of limitations because he thought the defendant would not be convicted on the merits. There is, however, no discernible strategic justification for Alexandre's trial counsel's failure to move to dismiss the kidnapping charge based on the statute of limitations. *See* 3 WAYNE R. LAFAVE ET AL., CRIMINAL PROCEDURE § 11.10(c) at 723 (2d ed.1999); *see also People v. Turner*, 5 N.Y.3d 476, 806 N.Y.S.2d 154, 840 N.E.2d 123, 128–29 (2006). The statute of limitations is a "substantial ground of defense" and the failure to consider it and raise it, whether due to a preference to decide the case on the merits or from mere inattention, falls "below what might be expected from an ordinary fallible attorney." *Aldus*, 2000 ME 47, ¶ 12, 748 A.2d at 467 (quotation marks omitted).

[¶ 46] We recognize, as have many courts, the simple reality that one of two or more simultaneous criminal convictions may result in a longer sentence of incarceration for a defendant's future convictions, create liability under recidivist statutes, impose a stigma, be used for impeachment, or "act as an impediment to clemency, pardon, more lenient conditions of imprisonment, and professional licensing." *See* 5 WAYNE R. LAFAVE et al., CRIMINAL PROCEDURE

§ 27.5(b) at 918 (2d ed.1999) (quotation marks omitted) (collecting cases). This is certainly true for a conviction for a crime as serious and socially abhorrent as kidnapping. Because Alexandre proved that the kidnapping charge would have been dismissed and that he was convicted of kidnapping, no more prejudice need be shown. The fact that Alexandre was also convicted of manslaughter and sentenced to forty years to be served concurrently does not eliminate the prejudice of the kidnapping conviction itself.

 [¶ 47] We conclude that Alexandre is prejudiced by his kidnapping conviction and should receive post-conviction relief. That relief should not extend, however, to Alexandre's manslaughter conviction. The post-conviction court did not err in finding that Alexandre's manslaughter conviction and sentence were not affected by the prejudice arising from Alexandre's attorney's ineffectiveness in failing to seek the dismissal of the kidnapping count. The burden was on Alexandre to prove the prejudicial effect of the kidnapping conviction on the manslaughter conviction and sentence. He failed to meet that burden.

[¶ 48] The failure to raise the kidnapping statute of limitations was not a "substantial ground of defense" to the manslaughter conviction. *See Aldus*, 2000 ME 47, ¶ 12, 748 A.2d at 467. Although Alexandre contends that the jury was affected by the kidnapping conviction, he offered no support for this argument to the post-conviction court. The possibility of any prejudice is minimal at most, because evidence relating to the kidnapping was relevant to the murder charge pursuant to M.R. Evid. 402. In addition, given the sentencing court's statement that the crimes of kidnapping and manslaughter were "intertwined" and were seen as "one course of conduct," the court's determination that Alexandre had not met his burden of prov-

ing prejudice with respect to the manslaughter sentence is supported by competent evidence in the record and is not clearly erroneous.

The entry is:

Judgment vacated. Remanded to the Superior Court for the entry of a denial of post-conviction relief as to the conviction for manslaughter, and for the entry of post-conviction relief as to the conviction for kidnapping, consistent with this opinion.